1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES GRAY and SCOTT HORTON, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| AMAZON.COM, INC., a Delaware corporation, and AMAZON.COM SERVICES LLC, a Washington limited liability company | |
| Defendants. | |

CLASS ACTION COMPLAINT

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

1

**CLASS ACTION COMPLAINT**

2          Plaintiffs James Gray and Scott Horton ("Plaintiffs"), individually and on behalf of all

3   others similarly situated, bring this complaint against Defendants Amazon.com, Inc. and

4   Amazon.com Services LLC (together, "Defendants" or "Amazon"), and upon personal knowledge

5   as to their own conduct and upon information and belief as to all other matters, allege as follows:

6                                    **INTRODUCTION**

7          1.     For years, millions of American consumers have trusted Amazon with the most

8   sensitive level of access to their private lives imaginable.  Plaintiffs and millions of other class

9   members gave Amazon access into their homes, 24 hours a day, 7 days a week, with permission

10  to listen and record their voices within the private sphere of their homes through a variety of

11  devices that operate a digital assistant software called "Alexa" (hereinafter "Alexa-Enabled

12  Devices").  They did so, however, based on false promises and deliberate misinformation from

13  Amazon about how their voice recordings and the information contained in the voice recordings

14  would be used.

15         2.     Specifically, Amazon has for years stated unequivocally that it "do[es] not use

16  voice recordings to target ads."  Similarly, Amazon's privacy policy claims that "Amazon knows

17  that you care how information about you is used, and we appreciate your trust that we will do so

18  carefully and sensibly."

19         3.     Yet recent revelations confirm that Amazon has broken that trust, and, in fact, ***does***

20  use voice recordings collected by Alexa to serve targeted ads to its customers.

21         4.     Amazon all but admitted as much in response to a research paper published just

22  over a month ago.  Amazon now admits that ""[s]imilar to what you'd experience if you made a

23  purchase on Amazon.com or requested a song through Amazon Music, if you ask Alexa to order

24  paper towels or to play a song on Amazon Music, the record of that purchase or song play may

25  inform relevant ads shown on Amazon or other sites where Amazon places ads."  The independent

26  research further confirms that Amazon is using its customers' voice prompts to Alexa in order to

27  influence targeted advertising served to that customer, regardless of whether a purchase was made.

28

CLASS ACTION COMPLAINT - 1

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

5.      Amazon's admission that it does, in fact, use Alexa voice prompts to inform targeted advertising placed by Amazon throughout its vast advertising network is shocking, especially coming after years of ***repeatedly disavowing*** any such usage.  Amazon's customers agreed to allow Alexa into their homes for a very specific and limited purpose—responding to and executing voice commands and queries.  Nothing in Alexa's terms of service or privacy policy discloses or obtains authorization for usage of their voice recordings for advertising purposes.

6.      Amazon's advertising segment is the fastest growing part of its business, generating more than $30 Billion last year, representing a nearly 250% increase in ad revenue in just 2 years.  Amazon is able to obtain a premium in auctioning its customers' eyes and ears off to the highest advertising bidder, because it builds dossiers about its customers based on data it collects, and its advertising partners pay a substantial premium for access to Amazon's customers because of that data collection.  But if Amazon is going to include its customers' Alexa voice prompts as part of its targeted advertising dossier, that must be clearly disclosed to, and authorized by, the customers.  Instead, Amazon obfuscates in its terms of service and privacy policy, while at the same time it publicly denies the kind of targeted advertising usage it has been engaged in all along.  This deliberate misdirection and unauthorized usage of Plaintiffs' and Class members' data is ongoing.

7.      Amazon's customers deserve complete transparency about how their Alexa-captured voice recordings are being used, so they can make informed decisions when they let Amazon's recording devices into their homes, and regain control over the privacy of their homes.  Plaintiffs ask the Court to order Amazon to (i) provide clear and accurate disclosures to its customers about Amazon's usage of Alexa-captured voice recordings for targeted advertising, (ii) offer effective privacy controls over Alexa-captured voice recordings and its usage for targeted advertising, and (iii) disgorge Amazon of the ill-gotten profits it has reaped through misleading customers into providing sensitive data via Alexa-captured voice recordings that Amazon surreptitiously was using to obtain a premium in its advertising revenue and compensate Plaintiffs and other Class members for Amazon's blatant violation of their privacy rights.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

1

**JURISDICTION**

2        8.      This Court has personal jurisdiction over Amazon because, among other things,

3   Amazon maintains its headquarters in this district.

4        9.      This Court has jurisdiction over the subject matter of this case pursuant to the Class

5   Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) because at least one Class member is of

6   diverse citizenship from Amazon, there are more than 100 Class members, and the aggregate

7   amount in controversy exceeds $5,000,000, exclusive of interest or costs.

8

**VENUE**

9        10.     Venue is proper in this District because the Defendant maintains its headquarters

10  here, and much of the relevant conduct at issue in this action took place within this district.

11

**PARTIES**

12       11.     Plaintiff James Gray is a resident of the state of Ohio, where he currently has 4

13  Alexa-Enabled Devices in his home.  Upon information and belief, he has been subjected to

14  unauthorized usage by Defendant Amazon of his Alexa-collected voice data to target him with ads

15  on numerous occasions without his consent.

16       12.     Plaintiff Scott Horton is a resident of the state of Massachusetts, where he currently

17  has 4 Alexa-Enabled Devices in his home.  Upon information and belief, he has been subjected to

18  unauthorized usage by Defendant Amazon of his Alexa-collected voice data to target him with ads

19  on numerous occasions without his consent.

20       13.     Defendant Amazon.com, Inc. and is a Delaware corporation with its headquarters

21  and principal place of business at 410 Terry Avenue North, Seattle, Washington.  Amazon is one

22  of only 3 or 4 companies in America whose presence in the modern internet age is virtually

23  unavoidable, simultaneously acting as the nation's largest online retailer, as well as one of the most

24  prolific streaming content providers of music, movies and other content, among many other

25  physical and digital properties it maintains.  It is also now one of the largest digital advertising

26  intermediaries, leveraging the massive amount of data it collects about its customers.  Amazon

27

28  CLASS ACTION COMPLAINT - 3

targets its customers with advertising based on customized profiles it creates from their data and sells that access to the highest bidding advertiser for a premium.

14.     Defendant Amazon.com Services LLC is a Washington limited liability company and is an indirect wholly-owned subsidiary of Amazon.com, Inc.   Defendant Amazon.com Services LLC is a party to the Alexa Terms of Use.

## FACTUAL ALLEGATIONS

**A.     Amazon's Alexa-Enabled Devices Have Become Ubiquitous in Homes Across America**

15.     Amazon first launched its Alexa service in November 2014 as a voice-activated digital personal assistant competing alongside the products of their other major competitors, such as Google Home Assistant, Apple's Siri, Microsoft's Cortana, and Samsung's Bixby.

16.     Alexa's popularity quickly surged.   From 2015 to 2016, total Echo device sales more than doubled from 2.4 million to 5.2 million, in 2017 approximately 7.85 million Alexa-Enabled Devices were sold, and today there are more than 40 million Alexa-Enabled Devices operating within the United States alone.

17.     Alexa is a digital assistant software that runs on a wide variety of hardware devices. The most common is a hardware device that Amazon itself manufactures and sells called the Echo, its smaller cousin, the Echo Dot, or the larger version with a screen, the Echo Show.   Amazon also manufactures a device that allows users to stream Amazon content to their TV called the "Fire Stick," which also runs Alexa.   Furthermore, Alexa can also run on devices manufactured by other companies that Amazon has partnered with.

18.     Alexa can perform a wide range of functions that the user controls using voice prompts.   All Alexa-Enabled Devices contain a microphone, that when active (turned on), is constantly recording any sound made within its vicinity.   Alexa is supposed to "ignore" sounds until it hears its "wake word", which is "Alexa".   The user therefore interacts with Alexa by speaking the word "Alexa", immediately followed by an inquiry or command that is within Alexa's range of capabilities.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

19.     Alexa-Enabled Devices can perform a wide range of functions.  For example, an Alexa-enabled TV could respond to the voice command "Alexa, play Teletubbies" by loading the popular children's show onto the TV.   Alexa is highly integrated into Amazon's other products and services, and can be used to make purchases from Amazon.com using nothing more than a voice command, for example "Alexa, order more orange juice."  Alexa can also answer questions, such as "Alexa, what is the weather in Seattle tomorrow?"

20.     Millions of Amazon customers have brought Alexa into their homes and given Amazon unprecedented access to monitor and record the speech within their homes, but they have done so with the understanding that such highly sensitive access will be done with the utmost transparency and respect for their privacy and solely for the purposes of responding to Alexa commands or inquiries.

**B.     Amazon Has Maintained for Years That It Does Not Use Voice Data Captured By Alexa-Enabled Devices for Targeted Advertising**

21.     Amazon publicly presents itself as a company that values customer privacy, puts customers in control of their data, and is transparent about how it uses the data it collects from its customers.

22.     Amazon representative Andrew DeVore testified to the US Senate Commerce Committee during 2018 hearings on the safekeeping and privacy of customer data: "We design our products and services so that it's easy for customers to understand when their data is being collected and control when it's shared," and "Our customers trust us to handle their data carefully and sensibly."[1]

23.     Amazon maintained its carefully crafted façade as a customer-centric company that was transparent about how it used customer data, even as public concern began to grow over the

---

[1] Amazon statement in response to "Amazon's Dark Secret: It Has Failed to Protect Your Data," Wired, November 10, 2021 (article raising concerns with the potential security risks posed by the growing prevalence of Alexa-Enabled Devices, the breadth and volume of data collected by Amazon through those devices, and Amazon's level of control over users' personal data), *available at* https://www.wired.com/story/amazon-failed-to-protect-your-data-investigation/, last visited 6/2/2022.

CLASS ACTION COMPLAINT - 5

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

proliferation of Alexa-Enabled Devices and the mountains of voice data Amazon collected through the devices:

> At Amazon, customer trust is at the centre of everything we do and we take privacy and security very seriously. We have always believed that privacy has to be foundational and built in to every piece of hardware, software, and service that we create. From the beginning, we've put customers in control and always look for ways to make it even easier for customers to have transparency and control over their Alexa experience.[2]

24.     Amazon has used the trust it cultivated to amass billions of interactions worth of data on its customers without ever fully disclosing how Amazon uses the data it collects from customers, including registered users of Alexa-Enabled Devices.

25.     Until recently, whenever Amazon was asked if it used the voice data it collects through Alexa-Enabled Devices in order to serve targeted ads to customers, Amazon unequivocally said "No".

26.     In 2017 Consumer Watchdog published a paper discussing patent applications filed by Amazon and Google "that would dramatically expand surveillance of consumers' private lives." When WBRC in Birmingham, AL reached out to Amazon for comment, an Amazon spokesperson responded that: "***We take privacy seriously and have built multiple layers of privacy into Echo devices. We do not use customer's voice recordings for targeted advertising***." (emphasis added).

27.     When the New York Times ran an article in 2018 titled "Hey, Alexa, What Can You Hear? And What Will You Do With It?" which disclosed a patent application Amazon filed for a "voice sniffer algorithm" that could be used to analyze audio on devices in almost real time and use the data gathered to target ads to the speakers, ***Amazon responded in a statement that it did "not use customers' voice recordings for targeted advertising***," and again stated that it took "privacy seriously."[3]

---

[2] "Amazon Echo's privacy issues go way beyond voice recordings," The Conversation, January 20, 2020, *available at* https://theconversation.com/amazon-echos-privacy-issues-go-way-beyond-voice-recordings-130016, last visited 6/2/2022.

[3] "Hey, Alexa, What Can You Hear? And What Will You Do With It?" New York Times, March 31, 2018 (emphasis added), *available at* https://www.nytimes.com/2018/03/31/business/media/amazon-google-privacy-digital-assistants.html, last visited June 2, 2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

28.     In 2019, NBC journalists conducted an experiment to see whether ads targeted to a given topic would show up if Amazon smart speaker users repeatedly talked about the same topic while the smart speaker was on, and published the results.  In response, a spokesperson for Amazon wrote to NBC and again reiterated that: "***We do not use voice recordings to target ads***."[4]

29.     Again in 2020 Amazon publicly disclaimed using Alexa-captured voice data for targeted advertising. Jon Forntt of CNBC interviewed David Limp, Amazon SVP of Devices and Services on the growth of Amazon's voice services.  Jon Forntt asked David Limp "How long before some of that data that consumers are putting in to the system through their Alexa requests, etc. starts informing ad placements more and more and becomes a real revenue driver?"  David Limp responded: "Yeah, we haven't really focused on ads that much."  Jon Forntt pushed back: "But you gotta be experimenting with it right?  Taking the data that you get and saying well how would we uh target advertising or make the experience better when we eventually do roll that out?" David Limp responded: "***We're not experimenting with [targeted advertising] yet***."[5]

**C.     Amazon Has Now Admitted That It Does, In Fact, Use Alexa-Captured Voice Data to Serve Targeted Ads to Users, As Confirmed by Independent Researchers**

30.     Despite years of publicly denying that it was using Alexa-captured voice data to serve targeted ads, Amazon has now admitted that it does just that.

31.     In April 2022, a research paper was published by a team of highly respected academics from the University of Washington, University of California-Davis, University of California-Irvine, and Northeastern University, titled *Your Echoes are Heard: Tracking, Profiling, and Ad Targeting in the Amazon Smart Speaker Ecosystem* (April 28, 2022) (the "Research Paper"), in which the researchers conducted a series of experiments that concluded with a high degree of scientific reliability that "Amazon processes voice data to infer user interests," and that

---

[4] "Are Smart Speakers Planting Ads On Our Social Media Profiles?" Dorian Hargrove and Consumer Bob, May24, 2019 (emphasis added), available at https://www.nbcmiami.com/news/local/are-smart-speakers-planting-ads-on-our-social-media-profiles/157153/, last visited 6/2/2022.
[5]     Squawk   on   the   Street   interview,   January   7,   2020   (emphasis   added),   *available   at* https://cnbc.com/video/2020/01/07/amazons-head-of-devices-on-growth-and-privacy-regulation.html,   last   visited 6/2/2022.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

their "measurements indicate the usage of voice data for on-platform (*i.e.*, audio ads), off-platform (*i.e.*, web ads), and cross-device (*i.e.*, non-Echo device) ad targeting." In other words, Amazon was doing exactly what it had denied for years—using Alexa-captured voice data to serve targeted ads to its customers, and doing so across the full spectrum of advertising channels on which Amazon operates (*see infra* Section V.B.). The academic researchers further concluded that "Amazon's inference of advertising interests from users' voice interactions seems to be inconsistent with their public statements."

32.    Amazon admitted as much in response to the evidence laid out in the Research Paper. Specifically, an Amazon statement to the press said that "[s]imilar to what you'd experience if you made a purchase on Amazon.com or requested a song through Amazon Music, **if you ask Alexa to order paper towels or to play a song on Amazon Music, the record of that purchase or song play may inform relevant ads shown on Amazon or other sites where Amazon places ads**."[6]

33.    Amazon's admission is stunning in light of the Company's sweeping statements for years denying that it used Alexa-captured voice data to target ads. Amazon's admission is still side-stepping the heart of the issue, however, because the Alexa interactions that were the subject of the Research Paper did not include any completed purchases, and instead were limited to voice prompts, and only a limited number of those were interactions with Amazon Music. Amazon's statement, while an important admission that Amazon does in fact use Alexa-captured voice data for targeted advertising, still does not explain the broader targeted advertising usage shown in the Research Paper.

**D.    Neither Amazon's Alexa Terms of Service nor its Privacy Policy Discloses or Obtains Authorization to Use Voice Data For Targeted Advertising**

34.    Amazon's maze of overlapping and interrelating Terms and Notices for Alexa users is purposely designed to confuse and obfuscate, but nowhere in the applicable Alexa Terms of

---

[6] *See* Study: How Amazon uses Echo smart speaker conversations to target ads, The Register (April 27, 2022) (emphasis added) *available at* https://www.theregister.com/2022/04/27/amazon_audio_data/, last visited 6/2/2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

Use, the Amazon Conditions of Use, or the Amazon Privacy Notice, does Amazon disclose that it uses Alexa-captured voice data to serve targeted ads to Alexa users.

35.     Amazon purports to bind Alexa users to terms and conditions in at least *13 separate* documents.  However, even if a user were to read through all of this material and somehow be able to make sense of all the overlapping, deliberately confusing and often inconsistent messaging throughout the various documents, ***at no point in these many various terms and policies does Amazon disclose that users' voice recordings are used to inform targeted advertising***. In fact, the words "ads," "advertising," "advertise," and "advertisements" do not appear a single time in the Alexa Terms of Use, the Amazon.com Conditions of Use, or the FAQs article entitled "Alexa, Echo Devices, and Your Privacy."[7]

36.     The "Alexa and Alexa Device FAQs," under the heading "How are my voice recordings used?" states as follows:

> Alexa uses your voice recordings and other information, including from third-party services, to answer your questions, fulfill your requests, and improve your experience and our services. We associate your requests with your Amazon account to allow you to review your voice recordings, access other Amazon services (e.g. so you can ask Alexa to read your Kindle books and play audiobooks from Audible), and to provide you with a more personalized experience.

The FAQ continues with the next heading, "How do my voice recordings and text transcripts improve Alexa?" and answers in part, "[W]e use your requests to Alexa to train our speech recognition and natural language understanding systems using machine learning […which] is necessary for Alexa to respond properly to the variation in our customers' speech patterns, dialects, accents, and vocabulary and the acoustic environments where customers use Alexa." These vaguely worded disclosures do not inform the user that their voice data will be used to direct targeted advertising, and in fact are deliberately designed to create the impression that Amazon only uses its customers' voice data to execute Alexa functions.

---

[7] Not only must Amazon users must navigate several different pages of different and overlapping sets of legalese in order to ascertain their rights and obligations, but the terms contained therein are vague and Amazon claims the ability to unilaterally change those terms at any time and without direct notice to Alexa users.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

37.     The Amazon.com Privacy Notice is similarly silent on voice data and advertising. In fact, the section marked "What About Advertising?" only contains two bullet points, "Third-Party Advertisers and Links to Other Websites," and "Use of Third-Party Advertising Services." The latter contains the disclaimer, "We never share your name or other information that directly identifies you when we do this." Voice data is not mentioned.

38.     The Amazon Device Terms of Use, under the header "Voice Services," contains equally nebulous phrasing. "Your Amazon Device may have features that allow you to access Alexa voice services or otherwise use your voice to perform certain tasks, such as check the weather, add a calendar entry, perform a search, or operate other connected products. When you use voice services, we may process your voice input and other information (such as location) in the cloud to respond to your requests and to improve your experience and our products and services." The Terms of Use neglect to even mention the word "advertise" or any iteration thereof.

39.     Alexa's Privacy Policy, the Amazon Conditions of Use, and many other Alexa and Alexa Device Terms not only fail to disclose the way in which voice data will be used for targeted advertising, they are intentionally misleading. These vague statements falsely imply to users that Amazon will not use its massive collection of voice recordings of their voices in intimate settings within their homes for directed advertising, cloaked in pledges of protecting user privacy and personalization.

**E.     Amazon Generates Over $30 Billion in Annual Advertising Revenue, Driven in Large Part by Targeted Ads**

40.     While Amazon is primarily known for its ubiquitous online marketplace and streaming content, advertising actually represents one of its largest and fastest growing revenue streams.  In fact, Amazon's advertising platform provides *double* the revenue of Amazon's physical stores, and Amazon earns more from advertising that it does from its subscription services, including Prime memberships.[8]

---

[8]  "Amazon has a $31 billion a year advertising business," Jordan Novet, CNBC, available at https://www.cnbc.com/2022/02/03/amazon-has-a-31-billion-a-year-advertising-

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

41.     Amazon generated ***$31.16 billion*** in advertising revenue in 2021 alone.  Amazon's advertising revenue for 2021 increased approximately 36% in a single year, from its 2020 annual advertising revenue of $19.77 billion.  Amazon's advertising revenue for 2021 was approximately 59.5% higher than its 2019 advertising revenue of $12.63 billion.[9]  Similarly, on February 3, 2022, Amazon provided figures for quarterly advertising net sales for Q32020 through Q42021, plus the percentage of Year over year growth excluding F/X ("YoY") for each quarter.  For example, Q42020 advertising net sales were 66% higher YoY than Q42019, and Q42021 advertising net sales were 33% higher YoY than Q42020.[10]

42.     How is Amazon able to maintain such impressive growth in its advertising revenue?  The answer lies in Amazon's unique ability to charge a premium from its advertising partners that is based on the data it collects from its customers.  Amazon sits in a very unique position in the global economy, as the #1 retailer in the nation and one of the top streaming content providers, Amazon has the ability to target its customers for advertising based on their preferences and behavior reflected in the data that Amazon continually harvests and maintains.  Advertisers pay Amazon a substantial premium for access (through Amazon) to that data so they can target users with advertisements that are more likely to convert into sales revenue.

1.     Amazon's Business Model Is Varied, Interconnected, and Far Reaching

43.     A business ecosystem is a network of organizations involved in the delivery of products and services through both competition and cooperation. Since its founding in 1994, Amazon has created one of the largest digital ecosystems in the world.  Through its ecosystem, Amazon is, among other things, a retailer, a technology company, a delivery company with its own fleet of planes, a go to source for entertainment, a B2B distributor, a cloud computing provider, and a growing advertising platform.  As of mid-2020, Amazon's digital ecosystem included over

---

business.html#:~:text=Advertising%20gives%20Amazon%20twice%20the,services%2C%20which%20icnlude%20 Prime%20memberships, last visited 6/8/2022.
[9] *See* https://www.statista.com/statistics/259814/amazons-worldwide-advertising-revenue-development/ , last visited 6/1/2022.
[10]  Businesswire, February 3, 2022, "Amazon.com Announces Fourth Quarter Results," available at https://www.businesswire.com/news/home/20220202005957/en/, last visited 6/1/2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

200 million Echo devices, 572 physical stores, a $19 billion digital ad business, 400 private label brands, a $40 billion revenue cloud business (Amazon Web Services), a $1.5 billion eSports business, blockchain and IoT services, healthcare initiatives, and a $40 billion R&D budget.

> 2.   Amazon's Targeted Advertising Revenue Is a Fundamental Part of its Business Model

44.     In 2020 there were 256 million digital buyers in the United States, with that number expected to grow to 291.2 million in 2025.[11]  The sheer number of people buying products online has been a golden opportunity for Amazon to get a solid foothold in the digital advertising market and add its own advertising platform to the Amazon ecosystem.

45.     Amazon offers a variety of advertising options, both self-serve and managed by Amazon, with the ability to advertise not just on Amazon, but also off Amazon.

46.     Amazon's advertising products include "Sponsored Products," "Sponsored Brands," "Sponsored Display," "Stores," "Audio ads," "Video ads," "Custom advertising," and most importantly, "Amazon DSP," which stands for Demand Side Platform, and was rolled out by Amazon in 2014.[12]

47.     DSP is significant because unlike other forms of traditional advertising where advertisers are merely paying for space to advertise on Amazon's digital properties, DSP is a service Amazon offers to advertisers to leverage all of the data Amazon collects about its customers in order to sell targeted advertising—at a substantial premium—based on that data.

48.     DSP can include audio, video, and display ads, both on and off of Amazon-owned properties.  For example, Amazon DSP advertisers can place ads on Amazon.com, Fire TV, IMDb.com, Kindle, Amazon Music, as well as on third party advertising exchanges.

49.     Amazon DSP is not limited to advertisers who sell on Amazon.com, the flagship online retail property.  Advertisers who do not sell on Amazon.com can still use Amazon DSP.

---

[11] "Number of digital buyers in the United States from 2017 to 2025," Statista, January 3, 2022, *available at* https://www.statista.com/statistics/273957/number-of-digital-buyers-in-the-united-states/, last visited 6/1/2022.

[12] "What does Amazon ads offer?" available at https://advertising.amazon.com/en-us/library/guides/basics-of-success-understanding-amazon-advertising/?ref_=a20m_us_libr, last visited 5/31/2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

50.     Programmatic advertising through Amazon DSP is a way to automatically buy and optimize digital advertising campaigns, generally through Real-Time Bidding ("RTB") auctions where ads are bought at the same time as a visitor loads a website, or opens an ad-supported app or streaming service.  It is used to purchase and place digital ad inventory across the web, on mobile devices, apps, videos, and on social media.

51.     RTB auctions also use headline bidding, a technology that allows publishers to request bids from multiple demand sources simultaneously and then send the bids to an ad server to conduct the auction, and render the ad with the winning bid on the site.[13]

52.     By the end of 2021, 88% of all digital display marketing spend was via programmatic advertising.  Roughly 90% of programmatic advertising is done through RTB.[14]

53.     RTB auctions are often done on ad exchanges, and Amazon DSP is connected to various third-party ad exchanges.

54.     Ad exchanges are online marketplaces where advertisers, agencies, demand-side platforms such as Amazon DSP, publishers, and supply-side platforms can simultaneously bid on digital advertising inventory from various publishers.[15]

55.     When a visitor accesses a website connected to the ad exchange, an auction signal is sent to the ad exchange, which then asks Amazon DSP if their advertisers have any ads that might fit the placement.  If Amazon DSP does, it sends a signal to the exchange to enter an RTB auction with other advertisers to compete for the ad placement.  The winning bidder's ad is rendered on the website.

56.     RTB transactions are made in the time it takes to load a webpage; around one-tenth of a second.

---

[13] *Id*.
[14] "What is Programmatic Advertising?  The Ultimate 2022 Guide," last updated May 31, 2022, *available at* https://www.match2one.com/blog/what-is-programmatic-advertising/, last visited 6/1/2022.
[15] "A beginner's guide to programmatic advertising," March 11, 2021, in What is Programmatic Advertising? A Complete 2022 Guide/Amazon Ads, *available at* https://advertising.amazon.com/blog/programmatic-advertising, last visited 5/31/2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

57.     RTB makes it possible for advertisers to place hundreds of thousands of ads online without needing to individually reach out to online publishers.  Billions of RTB bid requests are made each day.

**F.     The Growth of Amazon's Business Model Depends on Amazon Continuing to Collect Vast Amounts of Customer Data**

58.     A primary advantage of using a digital ecosystem is the ability to gather data about all aspects of the ecosystem, including processes, customers, and transactions.

59.     Data is a key driver for any digital ecosystem, and particularly Amazon's ecosystem.  Reportedly, Amazon managers have hung signs outside their offices that said: "In God we trust.  The rest, bring me data."

>           1.     <u>Amazon Offers Something No Other Digital Advertising Platform Has – The Unique Data Amazon Has Collected from its Customers, Including Voice Data from Alexa-Enabled Devices.</u>

60.     Amazon has the largest database of online shoppers in the world, with information on their browsing habits, purchasing decisions, even life stages and life changes over time.

61.     Amazon uses the personal information it collects from customers to create profiles or dossiers of each customer.

62.     Amazon leverages the customer dossiers for various purposes, including insights into customers' practices and desires in order to sell, upsell, design new products and services, and even guide customer expectations.

63.     Amazon also leverages customers' personal data to support the Amazon DSP advertising platform, including using the data to target ads at the customer whether they are on Amazon, social media, streaming a video, or on a third-party website.

64.     Advertisers who sign up to use Amazon's advertising platform can also leverage Amazon customers' personal data, and Amazon expects them to.

65.     The ability to leverage Amazon customer data to target ads, not just on Amazon but for placing ads on third party websites, is what sets Amazon's advertising platform apart from its competitors.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

66.     Amazon charges a premium for access to Amazon's advertising platform because of Amazon's superior ability to target ads to customers.

67.     Amazon puts access to Amazon's treasure trove of customer data front and center when explaining the unique benefits of Amazon DSP.

68.     In a March 11, 2021 article titled "A beginner's guide to programmatic advertising," Amazon explains that "Amazon DSP is unique because it enables programmatic buying of display, video, audio, and in-app ads both on and off Amazon.  Plus, Amazon DSP gives you access to audiences and insights from the millions of shoppers across Amazon's website and physical stores."[16]

69.     Amazon also tells advertisers that with Amazon DSP, they can "[u]se exclusive insights and shopping signals to connect with the most relevant audiences on and off Amazon."[17]

70.     Amazon customer data in Amazon DSP is tied to transaction data, allowing advertisers to break down audience segments based on a variety of options like buyer intent. Amazon DSP can help advertisers target future buyers through consumer habits around specific categories of products or specific products, and even through assumed future intent based on past buying history.

71.     Advertisements serve different objectives which ultimately funnel down to the customer making a purchase.

72.     When using Amazon DSP, advertisers define the audience they want to target, and the level of the advertising funnel they want to reach, using data and analytical tools from Amazon.

---

[16] "A beginner's guide to programmatic advertising," March 11, 2021, in What is Programmatic Advertising? A Complete 2022 Guide/Amazon Ads, *available at* https://advertising.amazon.com/blog/programmatic-advertising, last visited 5/31/2022.
[17] "Amazon DSP, Your brand in new places." *available at* https://advertising.amazon.com/en-us/solutions/products/amazon-dsp?ref=nb_sl_27sts99g7xkj_p_sspa_us_g_ggl_ct_592193285267&gclid=EAIaIQobChMIntHp4N6K-AIVU4BaBR1lJQc7EAAYASAAEgJ-U_D_BwE last visited 5/31/2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

73.     Many types of ads are limited to one or two parts of the advertising funnel.  Amazon DSP, in contrast, was designed by Amazon to "live throughout the funnel."[18]



[19]

74.     Because Amazon has personal data from all of its customers, including data on their shopping habits, Amazon can extrapolate from that data to determine customers' demographics, lifestyle choices, and interests with a high level of accuracy.

75.     Using Amazon's customer data as the underpinning, advertisers can target ads based on behavior, lifestyle, demographics, whether the customer is in-market for a product, current customer context, re-marketing, and audience lookalikes.[20]

76.     Behavior targeting focuses on customers who have carried out specific activities.

77.     Lifestyle targeting shows ads relevant to people who habitually buy from a particular brand-relevant category, for example, luxury bath products.

78.     Demographic targeting lets advertisers target ads based on age, gender, income, or location.

79.     Device targeting lets advertisers target ads to specific end-user devices.

80.     In-market targeting targets people in the market for specific products or services, for example ads for cat toys being targeted to cat owners.

---

[18] "Amazon Explained: DSP Targeting Capabilities," 2020, Podean Marketplace Marketing, *available at* https://www.podean.com/amazon-explained-dsp-targeting/, last visited 6/1/2022.
[19] *Id.*
[20] "Amazon DSP Targeting Options Explained," Victor Malachard, Nozzle, *available at* https://insights.nozzle.ai/amazon-dsp-targeting, last visited 5/31/2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

81.     Contextual targeting places ads based on what a user is browsing right then. Remarketing targets shoppers who have visited an advertiser's site before, or looked at but not purchased the advertiser's product on Amazon, or browsed products similar to the advertiser's with the goal of getting them to purchase the advertiser's product.

82.     Audience lookalike targeting targets ads to Amazon customers who are similar to the advertiser's current customers.

83.     Each of the targeting options described above depends on the personal data Amazon has collected and continues to collect from all Amazon customers to be effective.  Amazon is able to charge a premium to advertisers for ad targeting because of Amazon's exclusive access to its customers' data.  Unlike certain other activity that Amazon discloses will be monitored and used for targeted advertising, however, Amazon has never clearly disclosed or obtained user authorization for use of their Alexa-captured voice data for targeted advertising purposes.  Instead, Amazon deliberately misleads its Alexa customers and has publicly disclaimed usage of voice data for targeted advertising because Amazon knows that consumers are very concerned with how the voice data recorded by Alexa in their homes and around their personal conversations is used.

## G.     Amazon Used Plaintiff Gray's Alexa-Captured Voice Data to Target Him With Ads Without His Consent

84.     Plaintiff James Gray has been a registered user of Alexa products since 2018

85.     Currently, Plaintiff Gray has 4 Alexa-Enabled Devices, all various models of the Echo product, manufactured by Amazon.  All 4 devices are registered to the same Amazon account that was established by Plaintiff Gray.

86.     Each of the four devices is typically active 24 hours a day, 7 days a week.  Plaintiff Gray estimates that he has spoken more than 1,000 commands or questions to Alexa since he became a registered user.  Plaintiff Gray has never used any of the Alexa-Enabled Devices in his home to make a purchase.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

87.     Plaintiff Gray has on multiple occasions had an experience where he spoke a question or command to Alexa and was shortly thereafter served an advertisement by Amazon that was closely related to the subject of the command or question.

88.     Plaintiff Gray has never consented to the usage of his voice data by Amazon for the purpose of targeted advertising.

**H.      Amazon Used Plaintiff Horton's Alexa-Captured Voice Data to Target Him With Ads Without His Consent**

89.     Plaintiff Scott Horton has been a registered user of Alexa products for the last 5-7 years.

90.     Currently, Plaintiff Horton has 4 Alexa-Enabled Devices, including an Echo, Echo Dot, Sonos Move, and Alexa sound bar, all manufactured by Amazon.  All 4 devices are registered to the same Amazon account that was established by Plaintiff Horton.

91.     Each of the four devices is typically active 24 hours a day, 7 days a week.  Plaintiff Horton estimates that he has spoken more than 3,000 commands or questions to Alexa since he became a registered user.  Plaintiff Horton only infrequently used any of the Alexa-Enabled Devices in his home to make a purchase.

92.     Plaintiff Horton has on multiple occasions had an experience where he spoke a question or command to Alexa and was shortly thereafter served an advertisement by Amazon that was closely related to the subject of the command or question.

93.     Plaintiff Horton has never consented to the usage of his voice data by Amazon for the purpose of targeted advertising.

**CLASS ALLEGATIONS**

94.     **Class Definition**.  Plaintiffs seek certification of the Class set forth herein pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), as applicable, and (c)(4). Specifically, Plaintiffs seek class certification of all claims for relief herein on behalf of a Class defined as follows:

CLASS ACTION COMPLAINT - 18

All persons residing in the United States who are registered users of an Alexa-Enabled Device and have been served targeted advertisements by Amazon through its DSP.

Excluded from the Class are: (a) any judge or magistrate judge presiding over this action and members of their staff, as well as members of their families; (b) Amazon, Amazon's predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which Amazon has a controlling interest, as well as Amazon's current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Amazon; and (f) the legal representatives, successors, and assigns of any such excluded persons.

95.     **Ascertainability.** The proposed Class is readily ascertainable because the Class is defined using objective criteria to allow Class members to determine if they are part of the Class. Further, the Class can be readily identified through records that Amazon maintains.

96.     **Numerosity (Rule 23(a)(1)).** The Class is so numerous that joinder of individual members herein is impracticable. The exact number of Class members, as herein identified and described, is not known, but publicly available data indicates that in 2020, there were already over 46 million Alexa-Enabled Devices installed in the United States.

97.     **Commonality (Rule 23(a)(2)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class members, including the following:

a.   Whether Amazon engaged in the activities and practices referenced above;

b.   Whether Amazon had authorization from Alexa-Enabled Device users to use the content of user voice communications in connection with Amazon's advertising platform;

c.   Whether Amazon should retain the profits Amazon generated using Plaintiffs' and Class members' private and personally identifiable voice data;

d.   What is the economic value of Alexa-Enabled Device users' voice data;

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

e.  Whether Plaintiffs and the other Class members were injured and sustained damages or other losses as a result of Amazon's activities and practices referenced above, and, if so, in what amount;

f.  Whether Amazon unjustly profited from their activities and practices referenced above, and, if so, in what amount;

g.  Whether Amazon's activities and practices referenced above constitute a violation of the Washington Consumer Protection Act;

h.  Whether Amazon's activities and practices referenced above constitute a violation of the right of publicity pursuant to RCW 63.60.010 et seq.;

i.  Whether Amazon's activities and practices referenced above constitute an invasion of privacy;

j.  Whether Amazon's activities and practices referenced above breached the implied covenant of good faith and fair dealing;

k.  What is the appropriate injunctive relief to ensure that Amazon no longer unlawfully: (a) uses private and personally identifiable Alexa-Enabled Device users' voice data to create demand for and use of Amazon's advertising platform; (b) discloses private and personally identifiable Alexa-Enabled Device users' voice data to third parties in connection with Amazon's advertising platform; (c) causes the diminution in value of Alexa-Enabled Device users' private and personally identifiable voice data; and (d) profiles and targets, based on the above activities, Alexa-Enabled Device users with advertisements.

l.  Whether Plaintiffs and Class members are entitled to damages or injunctive relief.

98.  **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other Class members' claims, because, among other things, Plaintiffs and the other Class members sustained similar injuries as a result of Amazon's uniform wrongful conduct and their legal claims all arise from the same events and wrongful conduct by Amazon.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

99.     **Adequacy (Rule 23(a)(4)).** Plaintiffs will fairly and adequately protect the interests of the other Class members. Plaintiffs' interests do not conflict with the interests of the other Class members, and Plaintiffs have retained counsel experienced in complex class action and data privacy litigation to prosecute this case on behalf of the Class.

100.    **Predominance & Superiority (Rule 23(b)(3)).** In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining this action as a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class members, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy. The amount of damages available to Plaintiffs is insufficient to make litigation addressing Amazon's conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

101.    **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(b)(2). Amazon has acted or refused to act on grounds that apply generally to the Class, making final declaratory and/or injunctive relief appropriate with respect to the Class as a whole.

102.    **Particular Issues (Rule 23(c)(4)).** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Plaintiffs' claims consist of particular issues that are common to all Class members and are capable of class-wide resolution that will significantly advance the litigation.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

# CLAIMS AND VIOLATIONS ALLEGED

## COUNT I

### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Against All Defendants, On Behalf of Plaintiffs and the Nationwide Class)

103.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint as if fully restated herein.

104.    Plaintiffs brings this claim individually and on behalf of the Class.

105.    Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.

106.    The duty of good faith and fair dealing obligates the parties to cooperate with each other so that each may obtain the full benefit of performance.

107.    The duty of good faith and fair dealing also arises when the contract gives one party discretionary authority to determine a contract term.

108.    In dealings between Amazon and its users, Amazon is invested with discretionary power affecting all of the contractual terms between Amazon and its users.

109.    Amazon uses its discretionary power in deciding what to disclose and what not to disclose with respect to Amazon's use of Alexa-captured voice data in the various documents comprising the contractual agreement between Amazon and people, including Plaintiffs and Class members, who use or access Alexa.

110.    People who access or use Alexa or Alexa-Enabled Devices are subject to a complex web of contractual terms drafted and imposed by Amazon, including the Amazon Privacy Notice, Alexa Terms of Use, and Amazon Device Terms of Use.  Amazon also incorporates its answers to Frequently Asked Questions about how Alexa works, and privacy concerns regarding the collection and use of users' voice data into terms applicable to those who user or access Alexa. [21]

111.    Amazon purports to respect and protect its users' privacy.

---

[21] Alexa and Alexa Device Terms, *available at* https://www.amazon.com/gp/help/customer/display.html?nodeId=201566380, last visited 6/6/2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

112.    The Alexa Privacy Hub page reassures users that "Amazon designs Alexa and Echo devices with multiple layers of privacy and security—from built-in protections to controls and features you can see, hear, and touch" and "We believe in transparency when it comes to your data."[22]

113.    The Amazon.com Privacy Notice opens with the promise that: "We know that you care how information about you is used and shared, and we appreciate your trust that we will do so carefully and sensibly."[23]  Nowhere does Amazon.com Privacy Notice disclose that Amazon uses Alexa-captured voice data for the purpose of targeted advertising.

114.    The Amazon Device Terms of Use do not include targeted advertising in the description of how Amazon uses users' Alexa-captured voice data:

> **1. Features and software**
>
> ***
>
> **c. Voice services.** "When you use voice services, we may process your voice input and other information (such as location) in the cloud to respond to your requests and to improve your experience and our products and services."[24]

115.    Amazon further cements its implied promise that Amazon only uses Alexa users' voice data to execute Alexa functions in the Alexa and Alexa Device FAQs, by telling users:

> **9. How are my voice recordings used?**
>
> Alexa uses your voice recordings and other information, including from third-party services, to answer your questions, fulfill your requests, and improve your experience and our services. We associate your requests with your Amazon account to allow you to review your voice recordings, access

---

[22] Alexa Privacy – Learn how Alexa works, *available at* https://www.amazon.com/b/?node=19149155011, last visited 6/6/2022.

[23] Amazon.com Privacy Notice, *available at* https://www.amazon.com/gp/help/customer/display.html?nodeId=GX7NJQ4ZB8MHFRNJ, last visited 6/6/2022.

[24] *Available at* https://www.amazon.com/gp/help/customer/display.html?nodeId=202002080, last visited 6/6/2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

other Amazon services (e.g. so you can ask Alexa to read your Kindle books and play audiobooks from Audible), and to provide you with a more personalized experience. For example, keeping track of the songs you have listened to helps Alexa choose what songs to play when you say, "Alexa, play music." At times, Alexa can provide you with recommendations based on your requests. For example, Alexa may recommend Alexa skills you might like based on the Alexa skills you use.[25]

116.   Amazon's contractual promise that Amazon's use of Alexa users' voice data was limited to assisting in the execution of Alexa functions aligned with its public statements that Amazon did not use voice data for targeted advertising.[26]

117.   Despite its contractual privacy promises that Amazon only uses Alexa users' voice data in connection with the execution of Alexa functions, Amazon took actions contrary to those contractual promises to deprive Plaintiffs and Class members of the benefits of their contract with Amazon.

118.   Amazon's use of Alexa users' voice data to inform targeted advertising was objectively unreasonable given Amazon's privacy promises.

119.   Amazon's conduct in using Alexa users' voice data to inform targeted advertising evaded the spirit of the bargain made between Amazon and the Plaintiffs and Class members.

120.   Amazon's conduct in this case abused its discretionary power to specify terms—in particular, Amazon's failure to disclose that it was using Alexa users' voice data to inform targeted advertising or obtain users' consent to the same.

121.   As a result of Amazon's misconduct and breach of its duty of good faith and fair dealing, Plaintiffs and the Class members suffered damages. Plaintiffs and the Class members did not receive the benefit of the bargain for which they contracted and for which they paid valuable

---

[25] Alexa and Alexa Device FAQs, *available at* https://www.amazon.com/gp/help/customer/display.html?nodeId=201602230, last visited 6/6/2022.
[26] *See* Section V.B. *supra*.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

consideration in the form of their personal information, which, as alleged above, has ascertainable value to be proven at trial.

### COUNT II

**Violation Of The Washington Consumer Protection Act, Wash. Rev. Code § 19.86 et seq.**
**(Against All Defendants, On Behalf of Plaintiffs and the Nationwide Class)**

122.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint as if fully restated herein.

123.    Plaintiffs bring this claim individually and on behalf of the Class.

124.    The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code §19.86.020.

125.    The elements of a Washington CPA claim are (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) with a public interest impact, (4) an injury to plaintiff in his or her business or property, and (5) a causal relationship between the unfair or deceptive act and the resulting injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986).

126.    Amazon has committed unfair acts and practices in the conduct of trade or commerce, in violation of Wash. Rev. Code §19.86.020, by using the private information of Plaintiffs and the Class without their consent, including the voice data of Plaintiffs and the Class.

127.    Amazon committed its conduct in the context of trade or commerce. Amazon uses the voice data it collected from Plaintiffs and the Class for business purposes affecting interstate commerce, including by providing the data to third parties who purchase advertising services through Amazon's advertising platform, for profit.

128.    Amazon also sells its Alexa-Enabled Devices in interstate commerce in markets across the nation. Alexa-Enabled Device owners can use their Alexa-Enabled Device to make purchases, including through the Amazon e-commerce marketplace.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

129.   The public interest is harmed by Amazon's conduct in selling access to Plaintiffs' and the Class's voice data and the inferences gleaned from that data to third parties, without Plaintiffs' and the Class's consent, in violation of their fundamental privacy interests in controlling access to and dissemination of their personal data.   In addition, to the extent that Amazon uses Plaintiffs' and the Class's voice data directly or indirectly for profit or other benefit, Amazon is deriving an unfair competitive advantage as a result.

130.   Plaintiffs and the Class members have been injured by paying more for Alexa-Enabled Devices than they would have been willing to pay were it fully disclosed that Amazon was using Plaintiffs' and the Class's voice data collected from their Alexa-Enabled Devices to develop and sell the advertising services on Amazon's advertising platform and target ads to Plaintiffs and Class Members.  Plaintiffs and Class Members have been further injured by having their voice data and the inferences gleaned from that data to third parties used by Amazon for Amazon's personal gain, including through the development and sale of targeted advertising through Amazon's advertising platform, and without Plaintiffs' and the Class's consent.

131.   Plaintiffs and the Class expected their voice data collected by Amazon through their Alexa-Enabled Devices to be used to answer questions posed and fulfill requests made while they were using their Alexa-Enabled Devices.  Plaintiffs and the Class did not expect that Amazon would use their voice data and/or the inferences gleaned from that data to third parties for profit, and to target advertising to Plaintiffs and the Class.  These considerations are material to Plaintiffs and the Class as reasonable consumers.  Had Plaintiffs and the Class known how Amazon would use their voice data, the Alexa-Enabled Devices they purchased would have been worth less than a comparable product that performed the same functions without subjecting the consumer to constant monitoring of their speech for targeted advertising purposes.

132.   Plaintiffs and Class members have recognized property interests in their voices and the related right to not have their voices used by others without their consent. RCW 63.60.010, 63.60.050. Plaintiffs and Class members were deprived of the value inherent to their personal data

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

used by Amazon in connection with Amazon's advertising platform and its sale of targeted ads without Plaintiffs' and the Class's consent.

133.    A market exists for human individuals' voice recordings, and for the information included in human individuals' voice recordings, and entities and companies recognize that they have to pay for such information.  Plaintiffs and Class members have a property interest in their personal information, including the personal information collected through their voice data. Plaintiffs and Class members were deprived of the appropriate consideration and compensation that should have been paid to them when Amazon used their personal information from their voice data to profit in connection with Amazon's advertising platform.

134.    Amazon's actions are unfair as they offend public policy as established by statute, and are otherwise unethical, oppressive, and unscrupulous.

135.    There is a causal link between the unfair acts and deceptive practices complained of and the injuries alleged.  Plaintiffs and Class members' property interest in their voices and voice recordings were infringed by Amazon's unfair acts in utilizing Plaintiffs' and Class members' voice recordings for targeted advertising. Plaintiffs and Class members' property interests were infringed as a result of Amazon's misleading practices in failing to disclose that they were using Alexa-captured voice recordings for this purpose.

136.    Plaintiffs and the Class are entitled to damages, treble damages, and reasonable attorneys' fees pursuant to Wash. Rev. Code § 19.86.090.

**COUNT III**

**Invasion of Privacy – Intrusion on Seclusion**

**(Against All Defendants, On Behalf of Plaintiffs and the Nationwide Class)**

137.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint as if fully restated herein.

138.    Plaintiffs bring this claim individually and on behalf of the Class.

CLASS ACTION COMPLAINT - 27

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

139.    The elements of a claim for intrusion on seclusion are: (1) that the defendant deliberately intruded; (2) into the plaintiff's solitude, seclusion, or private affairs; (3) in a manner that would be highly offensive to a reasonable person.

140.    Amazon's Alexa-Enabled Devices are designed to be used in Amazon customers' private spheres, including in their homes.

141.    Amazon's Alexa-Enabled Devices are designed to be incorporated into Amazon customers' personal lives and private affairs.

142.    Alexa-Enabled Devices can be used to control the lights, temperature, and doors in users' homes; answer questions, including those of a sensitive, private, and personal nature; play music to set or reflect the mood in users' homes and other private spaces; set and start daily routines for users; call friends and family who also have Alexa-Enabled Devices; and, of course, let users make purchases from the privacy of their homes.

143.    Plaintiffs and Class members have communicated personal and private information in interactions with their Alexa-Enabled Devices, which was then collected and captured by Amazon as voice data.

144.    Plaintiffs and Class members reasonably expected that Amazon would not access, use, or disclose their voice data for purposes other than to answer questions posed and fulfill requests made while they were using their Alexa-Enabled Devices.

145.    Amazon fostered Plaintiffs' and Class members' expectation that Amazon would not access, use, or disclose their voice data for purposes other than to facilitate Plaintiffs' and Class members' use of their Alexa-Enabled Devices.  For example, Amazon explains Alexa's purpose as: "Alexa makes your life easier, more meaningful, and more fun by letting you voice control your world."  Amazon also claims that users "have transparency and control over your Alexa experience."

146.    Plaintiffs and Class members did not expect or know that Amazon would collect and use their voice data and the inferences and impressions gleaned from that data to create detailed, in-depth dossiers of users characteristics, lives, and habits.

CLASS ACTION COMPLAINT - 28

147.    Plaintiffs and Class members did not consent to Amazon's collection and use of their voice data and the inferences and impressions gleaned from that data to create detailed, in-depth dossiers of users' characteristics, lives, and habits.

148.    Plaintiffs and the Class did not expect or know that Amazon would collect and use their voice data and the inferences and impressions gleaned from that data to sell advertising services to third parties, or to target advertising to Plaintiffs and Class members.

149.    Plaintiffs and Class members did not consent to Amazon's collection and use of their voice data and the inferences and impressions gleaned from that data to sell advertising services to third parties, or to target advertising to Plaintiffs and Class members.

150.    Amazon's intrusion into Plaintiffs' and Class members' solitude, seclusion, and private affairs under the guise of collecting voice data through Alexa-Enabled Devices for Plaintiffs' and Class Members' benefit, while actually collecting Plaintiffs' and Class members' voice data to create dossiers of users' characteristics, lives, and habits in order to sell advertising services to third parties, and target advertising to Plaintiffs and Class members, is highly offensive to a reasonable person.

151.    Amazon unlawfully invaded the privacy rights of Plaintiffs and Class members by engaging in the conduct described above.

152.    As a result of the invasion of privacy caused by Amazon, Plaintiffs and the Class members suffered and will continue to suffer damages and injury as set forth herein.

153.    Plaintiffs and the Class members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution, injunctive relief, reasonable attorneys' fees and costs, and any other relief that is just and proper.

### COUNT IV
### Infringement of Personality Rights Pursuant to RCW 63.60.010 et seq.
### (Against All Defendants, On Behalf of Plaintiffs and the Nationwide Class)

154.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint as if fully restated herein.

CLASS ACTION COMPLAINT - 29

155.    Plaintiffs brings this claim individually and on behalf of the Class.

156.    Washington's Personality Rights Statute provides that "Every individual or personality has a property right in the use of his or her name, voice, signature, photograph, or likeness." RCW 63.60.010.

157.    Washington's Personality Rights Statute applies to all Plaintiffs and Class members nationwide by virtue of Amazon's choice of law clauses designating Washington law shall apply to all disputes. Further, the Statute expressly applies "regardless of the place of domicile" of the individual. RCW 63.60.010.

158.    Plaintiffs and Class members have recognized property rights in their voices.

159.    "Any person who uses or authorizes the use of a living or deceased individual's or personality's name, voice, signature, photograph, or likeness, on or in goods, merchandise, or products entered into commerce in this state, or for purposes of advertising products, merchandise, goods, or services, or for purposes of fund-raising or solicitation of donations, or if any person disseminates or publishes such advertisements in this state, without written or oral, express or implied consent of the owner of the right, has infringed such right. An infringement may occur under this section without regard to whether the use or activity is for profit or not for profit." RCW 63.60.050.

160.    Amazon used Plaintiffs' and Class members' voices in Washington for the purpose of advertising products, merchandise, goods, or services when they collected and captured voice data and utilized that data to create dossiers of users' characteristics, lives, and habits in order to sell advertising services to third parties, and target advertising to Plaintiffs and Class members.

161.    Plaintiffs' and Class members did not consent to Amazon's use of their voice data for the purpose of advertising.

162.    The short clips of speech that is present in the voice data utilized by Amazon for the purpose of advertising do not contain a sufficient amount of production authorship to be afforded copyright protection.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

163.    Amazon received substantial monetary benefits from third-party advertisers for the use of Plaintiffs' and Class members' voice data for targeted advertising to Plaintiffs and Class members.

164.    Plaintiffs and Class members are entitled to injunctive relief to prevent and restrain Amazon's continued unauthorized use of Plaintiffs' and Class members' voice data.

165.    Plaintiffs and Class members are further entitled to actual damages or statutory damages in the amount of $1,500 (whichever is greater), and all profits Amazon received from its unauthorized use of Plaintiffs and Class members' voice data, in an amount to be proven at trial.

**REQUEST FOR RELIEF**

166.    WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment in its favor and grant relief against Defendant Amazon as follows:

(a)    Issuing an injunction that Amazon immediately (i) cease and desist from all unauthorized collection and usage of voice data, (ii) revise its disclosures to accurately and clearly describe Amazon's voice data collection and usage practices, (iii) require users to opt-in (pursuant to clear and accurate disclosures) before serving them with targeted ads based on their voice data, and (iv) delete all voice data that was illegitimately collected;

(b)    Awarding monetary damages;

(c)    Ordering Amazon to disgorge all profits that it illegally obtained by and through its illegal conduct, and used to further fund or promote the illegal conduct or that constituted capital available for that purpose;

(d)    Awarding Plaintiffs their attorneys' fees and litigation costs; and,

(e)    Awarding such other relief as may be available and appropriate under the law or in equity.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

1

**JURY DEMAND**

2

Plaintiffs demand a trial by jury for all claims upon which a jury trial is available.

3

Dated:  June 8, 2022

4

Respectfully submitted,

5

6

*s/ Rebecca L. Solomon*, WSBA #51520
Rebecca L. Solomon

7

*s/ Jason T. Dennett*, WSBA #30686
Jason T. Dennett

8

**TOUSLEY BRAIN STEVENS PLLC**
1200 Fifth Avenue, Ste 1700

9

Seattle, WA 98101-3147
Tel:  (206) 682-5600

10

Fax:  (206) 682-2992
Email: rsolomon@tousley.com

11

        jdennett@tousley.com

12

*s/ Adam J. Levitt*
Adam J. Levitt (*Pro Hac Vice* Forthcoming)

13

*s/ Amy E. Keller*
Amy E. Keller (*Pro Hac Vice* Forthcoming)

14

*s/ Nada Djordjevic*
Nada Djordjevic (*Pro Hac Vice* Forthcoming)

15

*Sharon Cruz*
Sharon Cruz (*Pro Hac Vice* Forthcoming)

16

**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor

17

Chicago, Illinois  60602
Tel:  (312) 214-7900

18

Fax:  (312) 253-1443
Email: alevitt@dicellolevitt.com

19

        akeller@dicellolevitt.com
        ndjordevic@dicellolevitt.com

20

        scruz@dicellolevitt.com

21

*s/ David Straite*
David Straite (*Pro Hac Vice* Forthcoming)

22

*s/Corban Rhodes*
Corban Rhodes (*Pro Hac Vice* Forthcoming)

23

One Grand Central Place, 60 East 42nd St.
Suite 2400

24

New York, NY 10165
Tel: (646) 933-1000

25

Email: dstraite@dicellolevitt.com
        crhodes@dicellolevitt.com

26

27

***Co-Counsel for Plaintiffs and the Proposed Class***

28

CLASS ACTION COMPLAINT - 32