IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES GRAY and SCOTT HORTON, individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> AMAZON.COM, INC., a Delaware corporation, and AMAZON.COM SERVICES LLC, a Washington limited liability company <br><br> Defendants. | No. 2:22-cv-800-BJR <br><br> ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

## I. INTRODUCTION

Plaintiffs James Gray and Scott Horton ("Plaintiffs") brought this putative class action against Defendants Amazon.com, Inc. and Amazon.com Services LLC (together, "Amazon" or "Defendants"), asserting various claims arising from Amazon's alleged use of voice data collected through its Alexa digital assistant software for purposes of targeted advertising. Presently before the Court is Defendants' motion to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 37. Having reviewed the pleadings, the record of the case, and the relevant legal authorities, the Court GRANTS the motion. The Court's reasoning is set forth below.

ORDER - 1

## II. BACKGROUND[1]

### A. Factual Background

#### 1. Alexa

Amazon's Alexa is a voice-activated digital assistant software that runs on various devices sold by Amazon – including the family of "Echo" smart speakers – and other companies with which Amazon partners. Compl. ¶¶ 15-17. Alexa-enabled devices, all of which contain a microphone, perform a wide range of functions that are prompted by users' voiced commands and questions, such as turning on a television program, obtaining the day's weather forecast, and making purchases from Amazon.com. *Id.* ¶¶ 18-19. To interact with Alexa, a user must first say the "wake word" – which is "Alexa" – before speaking aloud their inquiry or command (*e.g.*, "what is the weather in Seattle tomorrow?"). *Id.* ¶ 18. Alexa will then respond with an audible answer or by performing the user's command. *Id*. For example, to place an order for orange juice on Amazon.com, a user may say, "Alexa, order more orange juice." *Id.* ¶ 19. Today, there are more than 40 million Alexa-enabled devices operating within the United States. *Id.* ¶¶ 16, 20.

#### 2. Terms Governing Alexa's Use

In addition to the Alexa Terms of Use (the "Alexa Terms"), which contain the primary terms and conditions governing Alexa's use (Declaration of Brian Buckley (Buckley Decl., Dkt. 38), Ex. A), Amazon relies on numerous other policies to set forth terms addressing specific aspects of Alexa and Alexa-enabled devices. Compl. ¶ 35.[2] Plaintiffs point to the "Alexa and Alexa Device FAQs" (the "Alexa FAQs") and the Amazon Device Terms of Use (the "Amazon

---

[1] The facts recited below are taken from Plaintiffs' Complaint ("Compl.," Dkt. 1). For the purposes of the present motion, the Court takes the factual allegations in the Complaint as true.

[2] While Plaintiffs do not identify them all, the Complaint alleges that "Amazon purports to bind Alexa users to terms and conditions in at least 13 separate documents." Compl. ¶ 35 (emphasis removed).

ORDER - 2

Device Terms") as explaining, in part, the features and functionality of Alexa and Alexa-enabled devices. The Alexa FAQs state, in relevant part:

> Alexa uses your voice recordings and other information, including from third-party services, to answer your questions, fulfill your requests, and improve your experience and our services. We associate your requests with your Amazon account to allow you to review your voice recordings, access other Amazon services (e.g. so you can ask Alexa to read your Kindle books and play audiobooks from Audible), and to provide you with a more personalized experience.

*Id*. ¶ 36. Similarly, the Amazon Device Terms explain:

> Your Amazon Device may have features that allow you to access Alexa voice services or otherwise use your voice to perform certain tasks, such as check the weather, add a calendar entry, perform a search, or operate other connected products. When you use voice services, we may process your voice input and other information (such as location) in the cloud to respond to your requests and to improve your experience and our products and services.

*Id.* ¶ 38.

The Alexa Terms expressly incorporate the Amazon.com Privacy Notice (the "Privacy Notice"),[3] which describes Amazon's practices of collecting and using personal information across its services and products. Buckley Decl., Ex. B. That notice, which is discussed in greater detail below, states in its preamble: "We know that you care how information about you is used and shared, and we appreciate your trust that we will do so carefully and sensibly." Compl. ¶ 113; Buckley Decl., Ex. B at 1. The Privacy Notice also states that Amazon "*use[s] your personal information to display interest-based ads for features, products, and services that might be of interest to you*." Buckley Decl., Ex. B. at 2 (emphasis added).[4]

---

[3] The Alexa Terms' preamble states that the Alexa Terms and the Privacy Notice, among other policies, comprise the "Agreement" to which users must agree as a condition to using Alexa. Buckley Decl., Ex. A at 1. That preamble further directs users to review the Privacy Notice before using Alexa. *Id*. ("Before using Alexa, please read … the [] Privacy Notice ….").

[4] Plaintiffs do not object to the Court's consideration, pursuant to the "incorporation by reference" doctrine, of exhibits submitted by Defendants reflecting Amazon webpages containing full versions of the Alexa Terms and the Privacy Notice. Buckley Decl., Exs. A-B; *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively

ORDER - 3

### 3. Amazon's Public Statements Concerning its Use of Voice Recordings and Plaintiffs' Allegations as to Subsequent Revelations

Plaintiffs allege that Amazon, over the course of several years, has consistently denied that it collects and uses Alexa users' voice data in order to serve targeted advertisements to them. Plaintiffs point, specifically, to three separate statements, made by Amazon spokespersons between 2017 and 2019 in response to media reports about Alexa, that Amazon does "not use customers' voice recordings for targeted advertising." Compl. ¶ 26 (2017 statement to local news station); *id.* ¶ 27 (2018 statement responding to New York Times article); *id.* ¶ 28 (2019 statement responding to NBC report). Plaintiffs also point to a 2020 on-air CNBC interview, during which Amazon's Senior Vice President of Devices and Services stated, in response to a question about whether Amazon was using Alexa-generated data for advertising purposes, that Amazon was "not experimenting with [targeted advertising] yet." *Id.* ¶ 29.

Plaintiffs claim that, contrary to Amazon's repeated denials, Amazon has been employing Alexa-captured voice data in its Demand Side Platform ("DSP"), which Plaintiffs allege is a service Amazon offers to third-party advertisers that "leverage[s] all of the data Amazon collects about its customers in order to sell targeted advertising … based on that data." Compl. ¶¶ 45-50.[5] Plaintiffs allege that the truth was revealed by a research paper entitled, *Your Echoes are Heard: Tracking, Profiling, and Ad Targeting in the Amazon Smart Speaker Ecosystem* (the "Research Paper"), that was published in April 2022 by a group of university researchers. *See* Umar Iqbal, et al., *Your Echos are Heard: Tracking, Profiling, and Ad Targeting in the Amazon Smart Speaker*

---

to the document or the document forms the basis of the plaintiff's claim."). Plaintiffs do object, on the other hand, to the Court's consideration of an exhibit reflecting a separate Amazon webpage, entitled "Interest-Based Ads," that describes Amazon's practices as to interest-based advertising. *See* Buckley Decl., Ex. C. The Court need not determine whether that exhibit may properly be considered given that it is not necessary to grant Defendants' motion.

[5] According to Plaintiffs, Amazon, through its DSP, auctions off advertising space – both on Amazon's platforms and on third-party websites – to advertisers through an assortment of ad exchanges. Compl. ¶¶ 50-68.

ORDER - 4

*Ecosystem*, ALEXAECHOS.COM, https://arxiv.org/pdf/2204.10920.pdf (rev. May 11, 2022). The researchers conducted a series of experiments in which they exposed different "interest personas" (*i.e.*, simulated persons having unique interests, such as fashion) to Alexa through separate Echo devices, and then observed, among other things, the advertisements displayed to each of them relative to those displayed to simulated "control personas." *Id.* While the Research Paper does not find any evidence that Amazon is sharing voice recordings or transcripts thereof with advertisers, it concludes that "Amazon processes voice data to infer user interests and uses it to serve targeted ads on-platform (Echo devices) as well as off-platform (web)." *Id.* at 1, 11-12, 16.

Following the Research Paper's publication, Amazon issued a press statement outlining its use of transaction data generated through Alexa for purposes of targeted advertising. Compl. ¶ 32. The statement explained, by way of example:

> [S]imilar to what you'd experience if you made a purchase on Amazon.com or requested a song through Amazon Music, if you ask Alexa to order paper towels or to play a song on Amazon Music, the record of that purchase or song play may inform relevant ads shown on Amazon or other sites where Amazon places ads.

*Id.* Thus, Defendants' position is that Amazon uses the records of Alexa users' transactions to inform advertisements displayed to them, but does not use recordings of Alexa users' questions or commands – *i.e.*, their "voice recordings" – for that purpose.

**B.     Procedural Background**

Plaintiffs, both of whom own and use Alexa-enabled devices, filed this lawsuit on June 8, 2022 as a class action on behalf of "[a]ll persons residing in the United States who are registered users of an Alexa-Enabled Device and have been served targeted advertisements by Amazon through its DSP." Compl. ¶ 94. On August 12, 2022, Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Rules of Federal Procedure. Plaintiffs opposed the motion (Dkt. 41 (Opp.")), and Defendants replied (Dkt. 43 ("Rep.")).

ORDER - 5

### III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is properly granted if the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). When considering a motion to dismiss under Rule 12(b)(6), courts must accept the factual allegations in the complaint as true and construe such allegations in the light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886-87 (9th Cir. 2018).

### IV. DISCUSSION

Plaintiffs assert numerous causes of action arising from what Plaintiffs allege is Amazon's unauthorized use of Alexa-captured "voice data"[6] for purposes of targeted advertising. Specifically, Plaintiffs assert claims for (1) breach of the implied covenant of good faith and fair dealing; (2) violation of Washington's Consumer Protection Act, RCW § 19.86 *et seq.*; (3) intrusion upon seclusion; and (4) infringement of personality rights in violation of

---

[6] Defendants take issue with Plaintiffs' use of the term "voice data," arguing that it is a "vague term" that potentially captures both "voice recordings" – which, according to Defendants, is a more commonly used term encompassing the content of what users say to Alexa – as well as transaction records (*e.g.*, purchases made or songs played) that are ultimately derived from what users say to Alexa. Mot. at 8; Rep. at 2. For the purposes of this motion, the Court will use the term, "voice data," to mean anything directly reflecting the content of what users utter to their Alexa-enabled devices, and not the transaction records derived from those utterances.

ORDER - 6

Washington's Personality Rights Act, RCW § 63.60.010 *et seq.*  Compl. ¶¶ 103-165.  The Court will review each claim in turn.

### A.  Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

"Under Washington law, [t]here is in every contract an implied duty of good faith and fair dealing that obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wash. 2d 102, 112-13, 323 (Wn. Sup. Ct. 2014) (citation and quotation marks omitted); *see 134th Street Lofts, LLC v. iCap Northwest Opportunity Fund, LLC*, 15 Wash. App. 2d 549, 566 (Wn. Ct. App. 2020) ("The implied duty of good faith and fair dealing protects a party's justified expectations in entering the agreement.").  That duty, however, does not create "a free-floating duty of good faith unattached to the underlying legal document," but instead "exists only in relation to performance of a specific contract term." *Badgett v. Sec. State Bank*, 116 Wash. 2d 563, 570 (Wn. Sup. Ct. 1991).  Moreover, the duty cannot "contradict express terms in a contract," and cannot be used to "interpret[] … contractual provisions in a manner that expands the scope of their plain meaning." *134th Street Lofts*, 15 Wash. App. 2d at 564-65.

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is premised on the theory that Amazon, by using Alexa-captured voice data to inform targeted advertising – a practice alleged to have been revealed by the Research Paper – breached "both the spirit and letter of the bargain that Alexa users agreed to" through the various policies governing Alexa's use.  Opp. at 8-9; *see* Compl. ¶¶ 116-20.  Plaintiffs point, specifically, to two aspects of those policies that, they contend, implied a duty to refrain from the alleged advertising practice.  The first is the descriptions of Alexa's functionality, as set forth in the Alexa FAQs and the Amazon Device Terms (*see supra* at 3), and the second is Amazon's stated commitment to privacy

ORDER - 7

in the Privacy Notice's preamble.  *See* Compl. ¶ 113 ("We know that you care how information about you is used and shared, and we appreciate your trust that we will do so carefully and sensibly."). According to Plaintiffs, those policies' omission of any reference to advertising, and expressed privacy commitment, conveyed "promises that Amazon only uses Alexa users' voice data in connection with the execution of Alexa functions." Compl. ¶ 117. Defendants, in moving to dismiss the claim, argue that the portions of the policies to which Plaintiffs refer do not create a duty on Amazon's part not to engage in targeted advertising. To the contrary, the Privacy Notice, in fact, disclosed it. Mot. at 5-6.

The Court finds that the applicable policies do not create any implied duty on Amazon's part to refrain from using Alexa-captured voice data to inform targeted advertisements. The Privacy Notice preamble, to start, simply expresses a generic aspiration to use information "carefully and sensibly." The Alexa FAQs and the Amazon Device Terms, for their part, simply describe Alexa's general features and functionality, and neither state nor imply that such descriptions set forth an exhaustive list of functions limited to fulfilling users' requests (*e.g.*, ordering orange juice). *See supra* at 3.[7] Indeed, those descriptions' additional (and broad) reference to improving Amazon's services indicates that fulfilling users' requests is not the only contemplated use of their voice data. *See* Compl. ¶ 36 (Alexa FAQs stating that "Alexa uses [] voice recordings … to answer [users'] questions, fulfill [users'] requests, *and improve [users'] experience and our services*." (emphasis added)); *id*. ¶ 38 (Amazon Device Terms stating that Amazon "may process [users'] voice input … to respond to [their] requests *and to improve [their]*

---

[7] Although the Court questions whether the Alexa FAQs is adequately alleged by Plaintiffs to have been binding in the absence of any allegation or explanation as to how it constitutes or becomes a part of a contract, *see, e.g.*, *Mills v. Bank of Am., N.A.*, No. 3:14-cv-05238, 2014 WL 4202465, at *5 (W.D. Wash. Aug. 22, 2014) (rejecting plaintiff's "novel claim" that website FAQ was incorporated into contract), the Court assumes that it is given that Defendants do not dispute it.

ORDER - 8

*experience and [Amazon's] products and services.*" (emphasis added)).  Plaintiffs' attempt to read into these policies a specific promise not to use voice data for advertising purposes would, in effect, create a "free-floating duty" untethered to the language of the policies.  *See Badgett*, 116 Wash. 2d at 570.

Moreover, the use of voice data for advertising purposes is contemplated in the applicable policies.  The Alexa Terms – which expressly incorporate the Privacy Notice (*see supra* at 3 n.3) – state that Amazon "processes and retains [users'] Alexa Interactions, such as [their] voice inputs," and that Amazon will handle "information about [users'] use of Alexa [and] Alexa Interactions … in accordance with the [] Privacy Notice."  Buckley Decl., Ex. A at 1, 3.  The Privacy Notice, in turn, states – in a section entitled, "For What Purposes Does Amazon Use Your Personal Information?" – that Amazon "*use[s] your personal information to display interest-based ads for features, products, and services that might be of interest to you*."  Buckley Decl., Ex. B at 2 (emphasis added).[8]  The Privacy Notice makes sufficiently clear that voice data falls within the scope of "personal information."  In particular, the first page of that policy explains that the "personal information" collected by Amazon includes "information about [users'] interaction with content and services available through Amazon Services," and a list of "Examples of Information Collected" includes "voice recordings when you speak to Alexa" and information provided "when you … talk to or otherwise interact[s] with our Alexa Voice service." *Id.*, Ex. B at 1, 5. Defendants deny that Amazon is, in fact, collecting and processing Alexa-captured voice data in order to inform interest-based advertisements.  According to Defendants, Amazon only gleans information

---

[8] In a separate section entitled, "What about Advertising?" the Privacy Notice further explains that Amazon "provide[s] ad companies with information that allows them to serve you with more useful and relevant Amazon ads," and directs users to a separate Amazon webpage that explains "how to opt-out of interest-based advertising." Buckley Decl., Ex. B at 3.

ORDER - 9

from Alexa users' transactions (*e.g.*, records of purchases made or songs played), much the same as any individual's transactions on a website. However, even assuming the truth of Plaintiffs' allegations that Amazon is using voice data for advertising purposes, that use would be contemplated in – and permitted by – the applicable policies.

Plaintiffs argue that the disclosures contained in the Privacy Notice are, regardless of their contents, irrelevant because Plaintiffs were not on notice of the Alexa Terms or the Privacy Notice, and those policies are therefore not binding on them. Opp. at 6-7. Plaintiffs contend that they could not have been on notice of the Privacy Notice, in particular, because it is posted on a webpage separate from where "any user would most obviously expect to find such information," and is accessible only by hyperlink. Opp. at 6. Plaintiffs' notice argument lacks merit. The Complaint extensively references the Alexa Terms and the Privacy Notice, and premises Plaintiffs' claim on Amazon's alleged breach of the Privacy Notice. *See, e.g.*, Compl. ¶¶ 37, 113. Nowhere do Plaintiffs allege that they did not find these policies or otherwise lacked notice of them. *See, e.g.*, *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 944 (N.D. Cal. 2018) (rejecting argument that plaintiffs lacked notice of disclaimer because they "acknowledge[d] the existence of [the] disclaimer and the manner in which it is presented" and "do not otherwise allege that they did not see or understand the disclaimer").

Moreover, Plaintiffs have each registered four Alexa-enabled devices and used them extensively for years. *See* Compl. ¶¶ 84-86, 89-91. Plaintiffs cannot now credibly claim that they were left unable to find the Alexa Terms, the primary policy governing Alexa's use, or the Privacy Notice as expressly incorporated therein. *See, e.g.*, *Garner v. Amazon.com, Inc.*, No. 21-cv-0750, 2022 WL 1443680, at *7 (W.D. Wash. May 6, 2022) ("Plaintiffs apparently activated their [Alexa] devices, thereby indicating consent to the recording of future communications."); *Wilcosky v.*

ORDER - 10

*Amazon.com, Inc.*, 517 F. Supp. 3d 751, 766 (N.D. Ill. 2021) (plaintiff consented to the Alexa Terms by registering his Alexa-enabled devices). Contrary to Plaintiffs' argument that the Privacy Notice was "obscured" and "segregated" through hyperlinks, the Alexa Terms' preamble prominently references and links to the Privacy Notice, and expressly states that it is integral to the terms governing Alexa's use. *See supra* at 3 n.3; *see also* Buckley Decl., Ex. A at 1 ("Before using Alexa, please read these Alexa Terms of Use, including the … Privacy Notice"). In sum, given Plaintiffs' registration and extensive use of their Alexa-enabled devices, the Alexa Terms' express and conspicuous incorporation of the Privacy Notice, and the absence of any allegation that Plaintiffs lacked notice of those policies, Plaintiffs are held to have received notice of them.[9]

Accordingly, the Court finds that Plaintiffs fail to allege adequately that Amazon had an implied contractual duty to refrain from using Alexa users' voice data for advertising purposes. In light of Amazon's authorization to do so – as set forth in the Alexa Terms, incorporating the Privacy Notice – any such implied duty would "contradict express terms in a contract." *134th Street Lofts*, 15 Wash. App. 2d at 564. Therefore, the Court will dismiss Plaintiffs' claim that Defendants breached the implied covenant of good faith and fair dealing.

---

[9] Plaintiffs also argue that the versions of the Alexa Terms and the Privacy Notice submitted by Defendants – both of which were in effect on the date the Complaint was filed – "do not apply to Plaintiffs' claims because they … went into effect long after Plaintiffs first registered their Alexa devices." Opp. at 5-6. This argument lacks merit. As an initial matter, Plaintiffs also cite to the versions in effect when the Complaint was filed – *i.e.*, not when they registered their devices (*see, e.g.*, Compl. ¶ 110 n.21) – and they point to nothing in Defendants' submitted versions that differs from any earlier version. Moreover, the Alexa Terms expressly provide that users' "continued use of Alexa" after any modifications to that agreement "constitutes [their] acceptance of the terms" therein. Buckley Decl., Ex. A at 3. Given Plaintiffs' alleged continued use of Alexa (*see* Compl. ¶¶ 84-86, 89-91), they would not be bound solely by policies in effect when they registered their devices. *See Miracle-Pond v. Shutterfly, Inc*., No. 19-cv-04722, 2020 WL 2513099, at *6 (N.D. Ill. May 15, 2020) (plaintiff "indicated her acceptance to the modified Terms of Use by continuing to use [company's website] products").

ORDER - 11

### B. Claim for Violation of Washington's Consumer Protection Act

Plaintiffs assert a claim under Washington's Consumer Protection Act ("CPA"), premised on allegations that Amazon has deceived Alexa users into believing that Amazon was using their voice data only for limited purposes, and that those limited purposes did not include advertising. *See, e.g.*, Opp. at 10; Compl. ¶ 126. To prevail on a CPA claim, "the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 37 (Wn. Sup. Ct. 2009). Defendants contend that the Complaint's allegations fail to establish the first and fifth elements. Mot. at 6-11.

#### 1. Whether Rule 9(b) Applies to Plaintiffs' CPA Claim

Before reviewing whether Plaintiffs adequately allege a CPA violation, the Court addresses the parties' dispute as to whether the heightened pleading standard applicable to fraud claims, set forth in Rule 9(b) of the Federal Rules of Civil Procedure, applies to Plaintiffs' claim. *See* Mot. at 7-8; Opp. at 9-10. The Court agrees with Defendants that it does. "While not all claims brought under the Washington CPA must be pled with the specificity prescribed by Rule 9(b), CPA claims that allege and depend upon a 'unified course of fraudulent conduct' as the basis of the claims 'sound in fraud,' and must be averred with particularity." *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1058 (W.D. Wash. 2020) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)). Accordingly, "[f]ederal courts have concluded that Rule 9(b) applies to [CPA] claims alleging that the defendant intentionally misled the public." *Cole v. Keystone RV Co., LLC*, No. 18-cv-5182, 2018 WL 4051805, at *2 (W.D. Wash. Aug. 24, 2018).

As Plaintiffs explain in their opposition brief, their CPA claim is based on the theory that Amazon "misleadingly represented" and "created a false impression," through its policies'

ORDER - 12

disclosures and public statements to the press, that Amazon was "only using Alexa users' voice data for limited purposes which did not include advertising." Opp. at 10. As such, Plaintiffs' claim, which is premised on an alleged scheme to mislead the public through various channels, "depend[s] upon a 'unified course of fraudulent conduct' as the basis of the claim[]," and therefore must be pled consistent with Rule 9(b)'s heightened pleading standard. *See Nemykina*, 461 F. Supp. 3d at 1058. Accordingly, for Plaintiffs' CPA claim to survive Defendants' motion, the Complaint "must state with particularity the circumstances" constituting the unfair or deceptive practice. Fed. R. Civ. P. 9(b); *see Hernandez v. Johnson & Johnson*, No. 4:20-cv-05136, 2021 WL 320612, at *5 (E.D. Wash. Jan. 8, 2021) (noting that, applying Rule 9(b), plaintiff's CPA claim "must be accompanied by the who, what, when, where, and how of the misconduct charged." (quoting *Vess*, 317 F.3d at 1106)).

### 2. Whether Plaintiffs Plead an Unfair or Deceptive Practice

In order to establish a "deceptive" act or practice, the plaintiff must show that the defendant's act or practice "had the capacity to deceive a substantial portion of the public." *Panag*, 166 Wash. 2d at 47, 50 ("Deception exists if there is a representation, omission or practice that is likely to mislead a reasonable consumer" (citation and quotation marks omitted)). It is possible that an act or practice is "unfair without being deceptive." *Klem v. Washington Mut. Bank*, 176 Wash. 2d 771, 786 (Wn. Sup. Ct. 2013). To prevail on such a theory, the plaintiff must establish that the act or practice "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits [to consumers or to competition]." *Alpert v. Nationstar Mortg. LLC*, No. 15-cv-1164, 2019 WL 1200541, at *6 (W.D. Wash. Mar. 14, 2019) (quoting *Klem*, 176 Wash. 2d at 786).

ORDER - 13

Plaintiffs do not adequately allege that Amazon engaged in an unfair or deceptive practice through its policies' disclosures. As discussed above, the applicable policies do not conceal Amazon's use of Alexa-captured voice data for advertising purposes, but instead contemplate that very practice. *See supra* at 8-10. The Court finds that Amazon's disclosures are not "likely to mislead a reasonable consumer" in the manner alleged by Plaintiffs, and therefore are not deceptive. *See Panag*, 166 Wash. 2d at 50; *see also Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1186 (W.D. Wash. 2010) ("Where there is no factual dispute as to what each party did, whether the conduct constitutes an unfair or deceptive act can be decided ... as a question of law." (citation and quotation marks omitted)). The Court also finds that Amazon's disclosures are not "unfair" insofar as consumers could "reasonably avoid" the injury Plaintiffs allege resulted from those disclosures.[10] *See Alpert*, 2019 WL 1200541, at *6. "An injury is reasonably avoidable if consumers have reason to anticipate the impending harm and the means to avoid it, or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact." *Hong v. Bank of Am., N.A.*, No. 20-cv-1667, 2021 WL 3207684, at *6 (W.D. Wash. July 29, 2021) (citations and quotation marks omitted), *aff'd*, 2022 WL 2235469 (9th Cir. June 22, 2022). In light of Amazon's disclosures, consumers would have "reason to anticipate" their injury and "the means to avoid it" – *i.e.*, by reviewing the Alexa Terms and declining to purchase and use an Alexa-enabled device.[11]

---

[10] Plaintiffs allege they were injured by paying more for Alexa-enabled devices than they otherwise would have had Amazon's practices been disclosed, and "by having their voice data and the inferences gleaned from that data" used for advertising purposes. Compl. ¶ 130.

[11] Defendants argue that Plaintiffs also could have avoided their alleged injury by opting out of interest-based advertising. *See* Buckley Decl., Ex. B at 3 (Privacy Notice directing users "how to opt-out of interest-based advertising"). The Court, however, agrees with Plaintiffs that this argument is inappropriate at this juncture in the absence of any allegations bearing on that opt-out procedure.

ORDER - 14

As noted above, Plaintiffs also contend that the statements Amazon's spokespersons made to the press between 2017 and 2020 (*see supra* at 4) were deceptive, as allegedly revealed by the Research Paper's findings. Whether or not those statements were deceptive is not a matter the Court need address because Plaintiffs fail to plead that the statements caused their alleged injuries. *See infra*.

### 3. Whether Plaintiffs Plead Causation

"[T]o establish causation the plaintiff must 'establish that but for the defendant's unfair or deceptive act or practice the plaintiff's injury would not have occurred' as a matter of fact." *Young v. Toyota Motor Sales, U.S.A.*, 196 Wash. 2d 310, 322 (Wn. Sup. Ct. 2020) (quoting *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc*., 162 Wash. 2d 59, 82 (Wn. Sup. Ct. 2007)). Defendants contend that Plaintiffs cannot establish causation in the absence of any allegation that they viewed or heard any of Amazon's allegedly misleading statements.

As discussed above, Plaintiffs may not premise a CPA claim on the disclosures contained in Amazon's policies. With respect to Amazon's public statements to the press, the Court agrees with Defendants that Plaintiffs fail to establish causation. In particular, the Complaint contains no allegations that Plaintiffs viewed or heard any of those statements or were otherwise aware of them at the time they purchased their Alexa-enabled devices or at any time prior to the filing of this lawsuit. Absent such allegations, Plaintiffs cannot establish that, but for Amazon's public statements, their injuries would not have occurred. *See, e.g.*, *Maple v. Costco Wholesale Corp*., 649 F. App'x 570, 572 (9th Cir. 2016) (plaintiff failed to establish causation because he did "not allege[] that he read those parts of the label" that he claimed were deceptive); *Woodell v. Expedia Inc*., No. 19-cv-0051, 2019 WL 3287896, at *11 (W.D. Wash. July 22, 2019) (plaintiff failed to

ORDER - 15

establish causation where she did "not allege that she read or even noticed" mislabeled booking charge alleged to have constituted the deceptive practice).

Accordingly, the Court will dismiss Plaintiffs' CPA claim.

### C.  Claim for Intrusion upon Seclusion

Plaintiffs assert a claim for intrusion upon seclusion, premised on allegations that Amazon collected Plaintiffs' voice data through their Alexa use and, without Plaintiffs' consent, utilized that data for advertising purposes.  *See* Compl. ¶¶ 137-53.  The "intrusion upon seclusion" cause of action – a species of invasion of privacy claims recognized under Washington common law – is based on the theory that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Buckley v. Santander Consumer USA, Inc*., No. 17-cv-5813, 2018 WL 1532671, at *7 (W.D. Wash. Mar. 29, 2018) (quoting *Mark v. Seattle Times*, 96 Wash. 2d 473, 497 (Wn. Sup. Ct. 1981)).  To prevail on such a claim, a plaintiff must establish the following elements:

1. An *intentional* intrusion, physically or otherwise, upon the solitude or seclusion of plaintiff, or his private affairs;
2. With respect to the matter or affair which plaintiff claims was invaded, that plaintiff had a legitimate and reasonable expectation of privacy;
3. The intrusion would be highly offensive to a reasonable person; and
4. That the defendant's conduct was a proximate cause of damage to plaintiff.

*Id.* (citation omitted) (emphasis added).

Defendants argue that Plaintiffs fail to plead the first and third elements.  Mot. at 11-13.  With respect to the first element, which relates in part to the requisite intent, "[a]n actor commits an intentional intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act."  *Poore-Rando v. United States*, No. 16-

ORDER - 16

cv-5094, 2017 WL 5756871, at *2 (W.D. Wash. Nov. 28, 2017) (*O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989)). By the same token, a person's consent to the allegedly intrusive act "negates the element of intentional intrusion upon the plaintiff's private affairs." *Budsberg v. Trause*, 191 Wash. App. 1021 (2015).

Plaintiffs' allegations are made against the backdrop of the terms of the policies to which they assented. While Plaintiffs correctly point out that "[i]ndividuals 'have a reasonable expectation of privacy where data is collected without their consent'" (Opp. at 13 (quoting *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1156-57 (N.D. Cal. 2021))), Plaintiffs' alleged circumstances demonstrate their consent. Plaintiffs allege that they are "registered user[s] of Alexa products." Compl. ¶¶ 84, 89. By using their Alexa devices, Plaintiffs consented to the Alexa Terms. *See* Buckley Decl., Ex. A at 1 (Alexa Terms stating: "By using Alexa, you agree to the terms of this Agreement on behalf of yourself and all other persons who use Alexa under your account."). As discussed above, Plaintiffs were on notice of the Alexa Terms and the Privacy Notice incorporated therein. *See supra* at 10-11. Given that those policies permit the collection and processing of voice data for advertising purposes, Plaintiffs' use of their Alexa devices granted Amazon consent to do so. Accordingly, Plaintiffs fail to show that Amazon "lack[ed] the necessary legal or personal permission" to commit the allegedly intrusive acts, and therefore Amazon's acts were not intentional. *See Poore-Rando*, 2017 WL 5756871, at *2.[12]

The Court will dismiss Plaintiffs' intrusion upon seclusion claim.

---

[12] Given the Court's finding that Plaintiffs fail to establish the "intentional intrusion" element of the claim, the Court need not review whether the Complaint adequately alleges the "highly offensive" element.

ORDER - 17

### D. Claim for Violation of Washington's Personality Rights Act

Plaintiffs claim that Defendants violated Washington's Personality Rights Act ("PRA") by collecting and using their voices, without their consent, for advertising purposes. Compl. ¶¶ 154-65. Under the PRA, "[e]very individual or personality has a property right in the use of his or her name, voice, signature, photograph, or likeness." RCW § 63.60.010. A claim for infringement under the PRA arises when:

> [a]ny person ... uses or authorizes the use of a living or deceased individual's or personality's name, voice, signature, photograph, or likeness, on or in goods, merchandise, or products entered into commerce in this state, or for purposes of advertising products, merchandise, goods, or services, or for purposes of fund-raising or solicitation of donations, or if any person disseminates or publishes such advertisements in this state, without written or oral, express or implied consent of the owner of the right.

RCW § 63.60.050.

The Court finds that Plaintiffs fail to allege a PRA violation. Plaintiffs do not allege that their voices were ever incorporated or otherwise used "on or in goods, merchandise, or products," or in advertisements for any "products, merchandise, goods, or services" that were targeted at them (or at anyone else). Rather, they allege that their voices were simply being leveraged by Amazon's DSP in order to enable third-party advertisers to optimize their advertising placements – *i.e.*, of advertisements not alleged to contain Plaintiffs' voices. *See supra* at 4, n.5. As such, Plaintiffs' allegations do not fit within the scope of the PRA.[13]

Accordingly, the Court will dismiss Plaintiffs' claim for violation of the PRA.

---

[13] Defendants argue that Plaintiffs' claim is barred by RCW § 63.60.070(3), which disallows plaintiffs from pursuing PRA claims as a class action. *See* RCW § 63.60.070(3) ("the individuals or personalities complaining of the use shall not bring their cause of action as a class action"). Plaintiffs respond – and Defendants dispute – that, under the Supreme Court's decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), such class action bars are unenforceable in diversity cases like this action. Given that Plaintiffs' PRA claim fails on the merits, the Court need not reach this issue.

ORDER - 18

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 37) is GRANTED. The Court hereby DISMISSES the Complaint without prejudice.

SO ORDERED.

Dated: January 26, 2022

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER - 19