# EXHIBIT A

# EXHIBIT A

The Honorable Barbara Rothstein

1

2

3

4

5

6

7
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

8

9
| | |
|---|---|
| JAMES GRAY and SCOTT HORTON, individually and on behalf of all others similarly situated, | Case No.: 2:22-cv-800-BJR |
| Plaintiffs, | CLASS ACTION [PROPOSED] AMENDED COMPLAINT |
| v. | |
| AMAZON.COM, INC., a Delaware corporation, and AMAZON.COM SERVICES LLC, a Washington limited liability company, | JURY TRIAL DEMANDED |
| Defendants. | |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION AMENDED
COMPLAINT

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CLASS ACTION COMPLAINT

Plaintiffs James Gray and Scott Horton ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this complaint against Defendants Amazon.com, Inc. and Amazon.com Services LLC (together, "Defendants" or "Amazon"), and upon personal knowledge as to their own conduct and upon information and belief as to all other matters, allege as follows:

### INTRODUCTION

1.      For years, millions of American consumers have trusted Amazon with the most sensitive level of access to their private lives imaginable.  Plaintiffs and millions of other Class members gave Amazon access into their homes, 24 hours a day, 7 days a week, with permission to listen and record their voices within the private sphere of their homes through a variety of devices that operate a digital assistant software called "Alexa" (hereinafter "Alexa-Enabled Devices").  They did so, however, based on false promises and deliberate misinformation from Amazon about how their voice recordings and the information contained in or derived from the voice recordings would be used.

2.      Specifically, Amazon has for years stated unequivocally that it "do[es] not use voice recordings to target ads."  Similarly, Amazon's privacy policy claims that "Amazon knows that you care how information about you is used, and we appreciate your trust that we will do so carefully and sensibly."  Yet recent revelations confirm that Amazon has broken that trust, and, in fact, *does* use voice recordings collected by Alexa, along with documents (such as transcripts) and information derived therefrom to serve targeted ads to its customers.[1]  Amazon all but admitted as much in response to a research paper originally published in April 2022 and most recently updated in February 2023.  Unable to refute the findings in the Research Paper, Amazon now admits that "[s]imilar to what you'd experience if you made a purchase on Amazon.com or requested a song through Amazon Music, if you ask Alexa to order paper towels or to play a song on Amazon

---

[1] Voice recordings collected by Alexa, any transcripts of those recordings, and any other data created or derived therefrom, including transaction records, are referred to collectively herein as "voice data."

Tousley Brain Stephens PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

Music, the record of that purchase or song play may inform relevant ads shown on Amazon or other sites where Amazon places ads." The independent research further confirms that Amazon is using its customers' voice prompts to Alexa in order to influence targeted advertising served to that customer, regardless of whether a purchase was made.

3. Amazon's admission that it does, in fact, use Alexa voice data to inform targeted advertising placed by Amazon throughout its vast advertising network is shocking, especially coming after years of *repeatedly disavowing* any such usage.

4. Amazon's customers, including Plaintiffs, agreed to allow Alexa into their homes for a very specific and limited purpose—responding to and executing voice commands and queries. Nothing in Amazon's or Alexa's terms of service or privacy policy discloses or obtains authorization for usage of their voice recordings or other voice data for advertising purposes.

5. Amazon's advertising segment is the fastest growing part of its business, generating more than $30 Billion in 2021, representing a nearly 250% increase in ad revenue in just 2 years. Amazon is able to obtain a premium when it auctions the details of its customers' lives off to the highest advertising bidder, because Amazon builds dossiers about its customers based on data it collects, including voice data, and its advertising partners pay a substantial premium for access to Amazon's customers because of that data collection. But if Amazon is going to include its customers' Alexa voice data as part of its targeted advertising dossier, that must be clearly disclosed to, and authorized by, the customers. Instead, Amazon obfuscates in its terms of service and privacy policy, while at the same time it publicly denies the kind of targeted advertising usage it has been engaged in all along. This deliberate misdirection and unauthorized usage of Plaintiffs' and Class members' data is ongoing.

6. Amazon's customers deserve complete transparency about how their Alexa-captured voice recordings and other voice data are being used, so they can make informed decisions when they let Amazon's recording devices into their homes, and regain control over the privacy of their homes. Plaintiffs ask the Court to order Amazon to (i) provide clear and accurate disclosures to its customers about Amazon's usage of Alexa-captured voice recordings and

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

associated voice data for targeted advertising, (ii) offer effective privacy controls over Alexa-captured voice recordings and associated voice data and its usage for targeted advertising, and (iii) disgorge Amazon of the ill-gotten profits it has reaped through misleading customers into providing sensitive data via Alexa-captured voice recordings that Amazon surreptitiously was using to obtain a premium in its advertising revenue and compensate Plaintiffs and other Class members for Amazon's blatant violation of their privacy rights.

## JURISDICTION

7.    This Court has personal jurisdiction over Amazon because, among other things, Amazon maintains its headquarters in this district.

8.    This Court has jurisdiction over the subject matter of this case pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) because at least one Class member is of diverse citizenship from Amazon, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest or costs.

## VENUE

9.    Venue is proper in this District because the Defendants maintain their headquarters here, and much of the relevant conduct at issue in this action took place within this district.

## PARTIES

10.    Plaintiff James Gray is a resident of the state of Ohio, where he currently has 4 Alexa-Enabled Devices in his home.  Upon information and belief, he has been subjected to unauthorized usage by Defendant Amazon of his Alexa-collected voice data to target him with ads on numerous occasions without his consent.

11.    Plaintiff Scott Horton is a resident of the state of Massachusetts, where he currently has 4 Alexa-Enabled Devices in his home.  Upon information and belief, he has been subjected to unauthorized usage by Defendant Amazon of his Alexa-collected voice data to target him with ads on numerous occasions without his consent.

12.    Defendant Amazon.com, Inc. and is a Delaware corporation with its headquarters and principal place of business at 410 Terry Avenue North, Seattle, Washington.  Amazon is one

CLASS ACTION AMENDED COMPLAINT - 3

of only 3 or 4 companies in America whose presence in the modern internet age is virtually unavoidable, simultaneously acting as the nation's largest online retailer, as well as one of the most prolific streaming content providers of music, movies and other content, among many other physical and digital properties it maintains.  It is also now one of the largest digital advertising intermediaries, leveraging the massive amount of data it collects about its customers.  Amazon targets its customers with advertising based on customized profiles it creates from their data and sells that access to the highest bidding advertiser for a premium.

13.    Defendant Amazon.com Services LLC is a Washington limited liability company and is an indirect wholly-owned subsidiary of Amazon.com, Inc.  Defendant Amazon.com Services LLC is a party to the Alexa Terms of Use.

## FACTUAL ALLEGATIONS

**A.    Amazon's Alexa-Enabled Devices Have Become Ubiquitous in Homes Across America**

14.    Amazon first launched its Alexa service in November 2014 as a voice-activated digital personal assistant competing alongside the products of their other major competitors, such as Google Home Assistant, Apple's Siri, Microsoft's Cortana, and Samsung's Bixby.

15.    Alexa's popularity quickly surged.  From 2015 to 2016, total Echo device sales more than doubled from 2.4 million to 5.2 million, in 2017 approximately 7.85 million Alexa-Enabled Devices were sold, and today there are more than 40 million Alexa-Enabled Devices operating within the United States alone.

16.    Alexa is a digital assistant software that runs on a wide variety of hardware devices. The most common is a smart speaker that Amazon itself manufactures and sells called the Echo, its smaller cousin, the Echo Dot, or the larger version with a screen, the Echo Show.  Amazon also manufactures a device that allows users to stream Amazon content to their TV called the "Fire Stick," which also runs Alexa.  Furthermore, Alexa can also run on devices manufactured by other companies that Amazon has partnered with.

CLASS ACTION AMENDED COMPLAINT - 4

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

17.    Alexa can perform a wide range of functions that the user controls using voice prompts.  All Alexa-Enabled Devices contain a microphone, that when active (turned on), is constantly recording any sound made within its vicinity.  Alexa is supposed to "ignore" sounds until it hears its "wake word", which is "Alexa".  The user therefore interacts with Alexa by speaking the word "Alexa", immediately followed by an inquiry or command that is within Alexa's range of capabilities.

18.    Alexa-Enabled Devices can perform a wide range of functions.  For example, an Alexa-enabled TV could respond to the voice command "Alexa, play Teletubbies" by loading the popular children's show onto the TV.  Alexa is highly integrated into Amazon's other products and services, and can be used to make purchases from Amazon.com using nothing more than a voice command, for example "Alexa, order more orange juice," or to keep track of items for later, for example "Alexa add coffee to my shopping list."  Alexa can also answer questions, such as "Alexa, what is the weather in Seattle tomorrow?"

19.    Millions of Amazon customers have brought Alexa into their homes and given Amazon unprecedented access to monitor and record the speech within their homes, but they have done so with the understanding that such highly sensitive access will be done with the utmost transparency and respect for their privacy and solely for the purposes of responding to Alexa commands or inquiries.

**B.    Amazon Has Maintained for Years That It Does Not Use Voice Data Captured By Alexa-Enabled Devices for Targeted Advertising**

20.    Amazon publicly presents itself as a company that values customer privacy, puts customers in control of their data, and is transparent about how it uses the data it collects from its customers.

21.    Amazon representative Andrew DeVore testified to the US Senate Commerce Committee during 2018 hearings on the safekeeping and privacy of customer data: "We design our products and services so that it's easy for customers to understand when their data is being

CLASS ACTION AMENDED COMPLAINT - 5

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

collected and control when it's shared," and "Our customers trust us to handle their data carefully and sensibly."[2]

22.     Amazon maintained its carefully crafted façade as a customer-centric company that was transparent about how it used customer data, even as public concern began to grow over the proliferation of Alexa-Enabled Devices and the mountains of voice data Amazon collected through the devices:

> At Amazon, customer trust is at the centre of everything we do and we take privacy and security very seriously. We have always believed that privacy has to be foundational and built in to every piece of hardware, software, and service that we create. From the beginning, we've put customers in control and always look for ways to make it even easier for customers to have transparency and control over their Alexa experience.[3]

23.     Amazon has used the trust it cultivated to amass billions of interactions worth of data on its customers, including registered users of Alexa-Enabled Devices, without ever fully disclosing how Amazon uses the data it collects from customers.

24.     Until recently, whenever Amazon was asked if it used the voice data it collects through Alexa-Enabled Devices in order to serve targeted ads to customers, Amazon unequivocally said "No".

25.     In 2017 Consumer Watchdog published a paper discussing patent applications filed by Amazon and Google "that would dramatically expand surveillance of consumers' private lives." When WBRC in Birmingham, AL reached out to Amazon for comment, an Amazon spokesperson responded that: "***We take privacy seriously and have built multiple layers of privacy into Echo devices. We do not use customer's voice recordings for targeted advertising***." (emphasis added).

---

[2] Amazon statement in response to "Amazon's Dark Secret: It Has Failed to Protect Your Data," Wired, November 10, 2021 (article raising concerns with the potential security risks posed by the growing prevalence of Alexa-Enabled Devices, the breadth and volume of data collected by Amazon through those devices, and Amazon's level of control over users' personal data), *available at* https://www.wired.com/story/amazon-failed-to-protect-your-data-investigation/, last visited 6/2/2022.
[3] "Amazon Echo's privacy issues go way beyond voice recordings," The Conversation, January 20, 2020, *available at* https://theconversation.com/amazon-echos-privacy-issues-go-way-beyond-voice-recordings-130016, last visited 6/2/2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

26.     When the New York Times ran an article in 2018 titled "Hey, Alexa, What Can You Hear? And What Will You Do With It?" which disclosed a patent application Amazon filed for a "voice sniffer algorithm" that could be used to analyze audio on devices in almost real time and use the data gathered to target ads to the speakers, ***Amazon responded in a statement that it did "not use customers' voice recordings for targeted advertising***," and again stated that it took "privacy seriously."[4]

27.     In 2019, NBC journalists conducted an experiment to see whether ads targeted to a given topic would show up if Amazon smart speaker users repeatedly talked about the same topic while the smart speaker was on, and published the results.  In response, a spokesperson for Amazon wrote to NBC and again reiterated that: "***We do not use voice recordings to target ads***."[5]

28.     Again in 2020 Amazon publicly disclaimed using Alexa-captured voice data for targeted advertising. Jon Forntt of CNBC interviewed David Limp, Amazon SVP of Devices and Services on the growth of Amazon's voice services.  Jon Forntt asked David Limp "How long before some of that data that consumers are putting into the system through their Alexa requests, etc. starts informing ad placements more and more and becomes a real revenue driver?"  David Limp responded: "Yeah, we haven't really focused on ads that much."  Jon Forntt pushed back: "But you gotta be experimenting with it right?  Taking the data that you get and saying well how would we uh target advertising or make the experience better when we eventually do roll that out?"  David Limp responded: "***We're not experimenting with [targeted advertising] yet***."[6]

---

[4] "Hey, Alexa, What Can You Hear? And What Will You Do With It?" New York Times, March 31, 2018 (emphasis added), *available at* https://www.nytimes.com/2018/03/31/business/media/amazon-google-privacy-digital-assistants.html, last visited June 2, 2022.

[5] "'Are Smart Speakers Planting Ads On Our Social Media Profiles?" Dorian Hargrove and Consumer Bob, May24, 2019 (emphasis added), available at https://www.nbcmiami.com/news/local/are-smart-speakers-planting-ads-on-our-social-media-profiles/157153/, last visited 6/2/2022.

[6] Squawk on the Street interview, January 7, 2020 (emphasis added), *available at* https://cnbc.com/video/2020/01/07/amazons-head-of-devices-on-growth-and-privacy-regulation.html, last visited 6/2/2022.

CLASS ACTION AMENDED COMPLAINT - 7

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

**C.     Amazon Has Now Admitted That It Does, In Fact, Use Alexa-Captured Voice Data to Serve Targeted Ads to Users, As Confirmed by Independent Researchers**

29.     Despite years of publicly denying that it was using Alexa-captured voice data to serve targeted ads, Amazon has now admitted that it does just that.

30.     In April 2022, a research paper was published by a team of highly respected academics from the University of Washington, University of California-Davis, University of California-Irvine, and Northeastern University, titled *Your Echoes are Heard: Tracking, Profiling, and Ad Targeting in the Amazon Smart Speaker Ecosystem* (originally published on April 28, 2022, most recently updated on February 20, 2023) (the "Research Paper"),[7] in which the researchers conducted a series of experiments that concluded with a high degree of scientific reliability that "Amazon processes voice data to infer user interests," and that their "measurements indicate the usage of voice data for on-platform (*i.e.*, audio ads), off-platform (*i.e.*, web ads), and cross-device (*i.e.*, non-Echo device) ad targeting."  In other words, Amazon was doing exactly what it had denied for years—using Alexa-captured voice data to serve targeted ads to its customers, and doing so across the full spectrum of advertising channels on which Amazon operates (*see infra* Section E).  The academic researchers further concluded that "Amazon's inference of advertising interests from users' voice interactions seems to be inconsistent with their public statements."

31.     Amazon admitted as much in response to the evidence laid out in the Research Paper.  Specifically, an Amazon statement to the press said that "[s]imilar to what you'd experience if you made a purchase on Amazon.com or requested a song through Amazon Music, **if you ask Alexa to order paper towels or to play a song on Amazon Music, the record of that purchase or song play may inform relevant ads shown on Amazon or other sites where Amazon places ads.**"[8]

---

[7] Available at https://arxiv.org/pdf/2204.10920.pdf (last visited March 3, 2023).

[8] *See* Jennifer Pattison Tuohy, *Researchers find Amazon uses Alexa voice data to target you with ads*,  at The Verge (April 28, 2022), https://www.theverge.com/2022/4/28/23047026/amazon-alexa-voice-data-targeted-ads-research-report  ("Amazon confirmed to *The Verge* that it does use voice data from Alexa interactions to inform relevant ads shown on Amazon or other sites where Amazon places ads. 'Similar to what you'd experience if you made a purchase on Amazon.com or requested a song through Amazon Music, if you ask Alexa to order paper towels or to

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

32.     Amazon's admission is stunning in light of the Company's sweeping statements for years denying that it used Alexa-captured voice data to target ads.  Amazon's admission is still side-stepping the heart of the issue, however, because the Alexa interactions that were the subject of the Research Paper did not include any completed purchases, and instead were limited to voice prompts, and only a limited number of those were interactions with Amazon Music.  Amazon's statement, while an important admission that Amazon does, in fact, use Alexa-captured voice data for targeted advertising, still does not explain the broader targeted advertising usage shown in the Research Paper.

**D.      Neither Amazon's Alexa Terms of Service nor its Privacy Policy Discloses or Obtains Authorization to Use Voice Data For Targeted Advertising**

33.     Amazon posts Terms and Notices for Alexa users on its website.

34.     Amazon's maze of overlapping and interrelating Terms and Notices for Alexa users is purposely designed to confuse and obfuscate.  Amazon currently purports to bind Alexa users to terms and conditions in at least 13 separate documents.  However, even if a user were to read through all of this material and somehow be able to make sense of all the overlapping, deliberately confusing and often inconsistent messaging throughout the various documents, at no point in these various terms and policies does Amazon disclose that users' voice recordings or associated voice data are used to inform targeted advertising. In fact, the words "ads," "advertising," "advertise," and "advertisements" do not appear a single time in the current versions of the Alexa Terms of Use, the Amazon.com Conditions of Use , the Amazon Device Terms of Use, or the FAQs article entitled "Alexa, Echo Devices, and Your Privacy," or the prior versions in effect at or around the time Plaintiffs initially registered their Alexa-Enabled Devices.  Nowhere in the current or prior versions of the applicable Alexa Terms of Use, the Amazon Conditions of Use, the Amazon Device

---

play a song on Amazon Music, the record of that purchase or song play may inform relevant ads shown on Amazon or other sites where Amazon places ads.' Amazon spokesperson Lauren Raemhild said in an email.") (last visited February 27, 2023).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

Terms of Use, or the Amazon.com Privacy Notice, does Amazon disclose that it uses Alexa-captured voice data to serve targeted ads to Alexa users.

35.    The versions of the Amazon.com Privacy Notice in effect 2016-2018, when Plaintiffs first registered their Alexa-Enabled Devices, do not identify voice recordings or other voice inputs as a source of personal information provided to Amazon, much less that Alexa-captured voice data is used to serve targeted ads:

From Amazon.com Privacy Notice, last updated September 30, 2016

**What Personal Information About Customers Does Amazon.com Gather?**

• The information we learn from customers helps us personalize and continually improve your Amazon experience. Here are the types of information we gather.

• **Information You Give Us:** We receive and store any information you enter on our Web site or give us in any other way. Click here to see examples of what we collect. You can choose not to provide certain information, but then you might not be able to take advantage of many of our features. We use the information that you provide for such purposes as responding to your requests, customizing future shopping for you, improving our stores, and communicating with you.

• **Automatic Information:** We receive and store certain types of information whenever you interact with us. For example, like many Web sites, we use "cookies," and we obtain certain types of information when your Web browser accesses Amazon.com or advertisements and other content served by or on behalf of Amazon.com on other Web sites. Click here to see examples of the information we receive.

• **Mobile:** When you download or use apps created by Amazon or our subsidiaries, we may receive information about your location and your mobile device, including a unique identifier for your device. We may use this information to provide you with location-based services, such as advertising, search results, and other personalized content. Most mobile devices allow you to turn off location services. For more information about how to do this, click here.

• **E-mail Communications:** To help us make e-mails more useful and interesting, we often receive a confirmation when you open e-mail from Amazon.com if your computer supports such capabilities. We also compare our customer list to lists received from other companies, in an effort to avoid sending unnecessary messages to our customers. If you do not want to receive e-mail or other mail from us, please adjust your Customer Communication Preferences .

• **Information from Other Sources:** We might receive information about you from other sources and add it to our account information. Click here to see examples of the information we receive.

****

**Examples of Information Collected**

**Information You Give Us**

• You provide most such information when you search, buy, post, participate in a contest or questionnaire, or communicate with customer service. For example, you provide

CLASS ACTION AMENDED COMPLAINT - 10

information when you search for a product; place an order through Amazon.com or one of our third-party sellers; provide information in Your Account (and you might have more than one if you have used more than one e-mail address when shopping with us) or Your Profile ; communicate with us by phone, e-mail, or otherwise; complete a questionnaire or a contest entry form; use our services such as Amazon Instant Video; compile Wish Lists or other gift registries; participate in Discussion Boards or other community features; provide and rate Reviews; and employ Product Availability Alerts, such as Available to Order Notifications. As a result of those actions, you might supply us with such information as your name, address, and phone numbers; credit card information; people to whom purchases have been shipped, including addresses and phone number; people (with addresses and phone numbers) listed in 1-Click settings; e-mail addresses of your friends and other people; content of reviews and e-mails to us; personal description and photograph in Your Profile ; and financial information, including Social Security and driver's license numbers.

**Automatic Information**

Examples of the information we collect and analyze include the Internet protocol (IP) address used to connect your computer to the Internet; login; e-mail address; password; computer and connection information such as browser type, version, and time zone setting, browser plug-in types and versions, operating system, and platform; purchase history, which we sometimes aggregate with similar information from other customers to create features like Top Sellers ; the full Uniform Resource Locator (URL) clickstream to, through, and from our Web site, including date and time; cookie number; products you viewed or searched for; and the phone number you used to call our 800 number. We may also use browser data such as cookies, Flash cookies (also known as Flash Local Shared Objects), or similar data on certain parts of our Web site for fraud prevention and other purposes. During some visits we may use software tools such as JavaScript to measure and collect session information, including page response times, download errors, length of visits to certain pages, page interaction information (such as scrolling, clicks, and mouse-overs), and methods used to browse away from the page. We may also collect technical information to help us identify your device for fraud prevention and diagnostic purposes.[9]

From Amazon.com Privacy Notice, last updated August 28, 2017

**What Personal Information About Customers Does Amazon.com Gather?**

The information we learn from customers helps us personalize and continually improve your Amazon experience. Here are the types of information we gather.

- **Information You Give Us:** We receive and store any information you enter on our Web site or give us in any other way. Click here to see examples of what we collect. You can choose not to provide certain information, but then you might not be able to take advantage of many of our features. We use the information that you provide for such purposes as responding to your requests, customizing future shopping for you, improving our stores, and communicating with you.

- **Automatic Information:** We receive and store certain types of information whenever you interact with us. For example, like many Web sites, we use "cookies," and we obtain

---

[9] Available at
https://web.archive.org/web/20170603043007/https://www.amazon.com/gp/help/customer/display.html?nodeId=468496#GUID-1B2BDAD4-7ACF-4D7A-8608-CBA6EA897FD3__SECTION_87C837F9CCD84769B4AE2BEB14AF4F01 (in effect September 30, 2016 through August 27, 2017) (last visited March 1, 2023).

CLASS ACTION AMENDED COMPLAINT - 11

certain types of information when your Web browser accesses Amazon.com or advertisements and other content served by or on behalf of Amazon.com on other Web sites. Click here to see examples of the information we receive.

- **Mobile:** When you download or use apps created by Amazon or our subsidiaries, we may receive information about your location and your mobile device, including a unique identifier for your device. We may use this information to provide you with location-based services, such as advertising, search results, and other personalized content. Most mobile devices allow you to turn off location services. For more information about how to do this, click here.

- **E-mail Communications:** To help us make e-mails more useful and interesting, we often receive a confirmation when you open e-mail from Amazon.com if your computer supports such capabilities. We also compare our customer list to lists received from other companies, in an effort to avoid sending unnecessary messages to our customers. If you do not want to receive e-mail or other mail from us, please adjust your Customer Communication Preferences.

- **Information from Other Sources:** We might receive information about you from other sources and add it to our account information. Click here to see examples of the information we receive.

*****

### Examples of Information Collected

### Information You Give Us

You provide most such information when you search, buy, post, participate in a contest or questionnaire, or communicate with customer service. For example, you provide information when you search for a product; place an order through Amazon.com or one of our third-party sellers; provide information in Your Account (and you might have more than one if you have used more than one e-mail address when shopping with us) or Your Profile ; communicate with us by phone, e-mail, or otherwise; complete a questionnaire or a contest entry form; use our services such as Amazon Instant Video ; compile Wish Lists or other gift registries; participate in Discussion Boards or other community features; provide and rate Reviews; and employ Product Availability Alerts , such as Available to Order Notifications. As a result of those actions, you might supply us with such information as your name, address, and phone numbers; credit card information; people to whom purchases have been shipped, including addresses and phone number; people (with addresses and phone numbers) listed in 1-Click settings; e-mail addresses of your friends and other people; content of reviews and e-mails to us; personal description and photograph in Your Profile ; and financial information, including Social Security and driver's license numbers.

### Automatic Information

Examples of the information we collect and analyze include the Internet protocol (IP) address used to connect your computer to the Internet; login; e-mail address; password; computer and connection information such as browser type, version, and time zone setting, browser plug-in types and versions, operating system, and platform; purchase history, which we sometimes aggregate with similar information from other customers to create features like Top Sellers; the full Uniform Resource Locator (URL) clickstream to, through, and from our Web site, including date and time; cookie number; products you viewed or searched for; and the phone number you used to call our 800 number. We may also use browser data such as cookies, Flash cookies (also known as Flash Local Shared Objects), or similar data on certain parts of our Web site for fraud prevention and other purposes. During some visits we may use software tools such as JavaScript to measure

CLASS ACTION AMENDED COMPLAINT - 12

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

and collect session information, including page response times, download errors, length of visits to certain pages, page interaction information (such as scrolling, clicks, and mouse-overs), and methods used to browse away from the page. We may also collect technical information to help us identify your device for fraud prevention and diagnostic purposes.[10]

36.     The Amazon.com Privacy Notices in effect 2016-2018 gave only passing mention to third party advertising:

**What About Third-Party Advertisers and Links to Other Websites?**

Our site includes third-party advertising and links to other Web sites. For more information about third-party advertising at Amazon.com, including personalized or interest-based ads, please read our Interest-Based Ads policy.

Clicking the hyperlink for the Interest-Based Ads policy takes you to a page that says, in relevant part:

**Interest-Based Ads**

On both Amazon-owned and operated sites and unaffiliated sites, Amazon displays interest-based advertising using information you make available to us when you interact with our sites, content, or services. Interest-based ads, also sometimes referred to as personalized or targeted ads, are displayed to you based on information from activities such as purchasing on our sites, visiting sites that contain Amazon content or ads, interacting with Amazon tools, or using our payment services, like Checkout by Amazon. Click here for more information about the types of information that we gather. In providing interest-based ads, we follow the Self-Regulatory Principles for Online Behavioral Advertising developed by the Digital Advertising Alliance (a coalition of marketing, online advertising, and consumer advocacy organizations).

Like other online ad networks, we use cookies, web beacons (also known as action tags or single-pixel gifs), and other technologies (collectively, "cookies"). Cookies enable us to learn about what ads you see, what ads you click, and other actions you take on our sites and other sites. This allows us to provide you with more useful and relevant ads. For example, if we know what ads you are shown we can be careful not to show you the same ones repeatedly. We do not associate your interaction with unaffiliated sites with your identity in providing you with interest-based ads.

We do not provide any personal information to advertisers or to third party sites that display our interest-based ads. However, advertisers and other third-parties (including the ad networks, ad-serving companies, and other service providers they may use) may assume that users who interact with or click on a personalized ad or content are part of the group that the ad or content is directed towards (for example, users in the Pacific Northwest who bought or browsed for classical music). Also, some third-parties may provide us information about you (such as the sites where you have been shown ads or demographic

---

[10] Available at
https://web.archive.org/web/20200909115320/https://www.amazon.com/gp/help/customer/display.html?ie=UTF8&nodeId=16015091 (in effect August 28, 2017 through December 31, 2019) (last visited March 1, 2023).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

information) from offline and online sources that we may use to provide you more relevant and useful advertising.[11]

37.     Because Amazon did not identify voice recordings or voice inputs as one of the types of information users make available to Amazon when interacting with Amazon, an Alexa-Enabled Device user reading the Amazon.com Privacy Notice and Interest-Based Ads policy in effect 2016-2018, would understand Amazon's disclosures to mean that Amazon did not use Alexa-captured voice data to serve targeted ads.

38.     The "Alexa and Alexa Device FAQs,"[12] from 2016-2018, under the headings "How do I use Alexa?" and "Will the voice services improve over time?" states as follows:

**1. How do I use Alexa?**

Alexa is a cloud service. Activating Alexa works differently based on the type of Alexa-enabled product. For far-field Alexa-enabled devices like the Amazon Echo or Echo Dot, say the wake word to activate Alexa. For devices like Amazon Tap, activate Alexa by pressing the Talk or microphone button. Then ask Alexa a question, such as "what is the weather today in New York?", or tell Alexa to do something, like "add batteries to my shopping list" or "play jazz." Your question or request and related information, like music playlists, calendar entries, connected home devices, and items on your shopping list, will be processed in the Cloud.

**2. Will the voice services improve over time?**

Yes, Alexa is developed to get better over time. Alexa uses your voice recordings and other information, including from third-party services, to answer your questions, fulfill your requests, and improve your experience and our services. When you set up your Alexa-enabled product or link third-party services with Alexa, Alexa begins processing some information, such as your music playlists. You can also help us improve the voice services by providing feedback within History or by using Voice Training in the Alexa App.

And with a slight modification to add Fire TV in mid-2018:

**1. How do I use Alexa?**

Alexa is a cloud service. Activating Alexa works differently based on the type of Alexa-enabled product. For far-field Alexa-enabled devices like the Amazon Echo or Echo Dot, say the wake word to activate Alexa. For devices like Amazon Tap and Fire TV, activate Alexa by pressing the Talk or microphone button. Then ask Alexa a question, such as

---

[11] Available at
https://web.archive.org/web/20200917094346/https://www.amazon.com/b?ie=UTF8&node=5160028011 (last visited March 1, 2023).

[12] *See, e.g.*,
https://web.archive.org/web/20160409100358/https://www.amazon.com/gp/help/customer/display.html?nodeId=201602230 (captured 4/9/2016);
https://web.archive.org/web/20180103150928/https://www.amazon.com/gp/help/customer/display.html?nodeId=201602230 (captured 1/3/2018) (both last visited March 2, 2023).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

"what is the weather today in New York?", or tell Alexa to do something, like "add batteries to my shopping list" or "play jazz." Your question or request and related information, like music playlists, calendar entries, connected home devices, and items on your shopping list, will be processed in the Cloud.

**2. Will the voice services improve over time?**

Yes, Alexa is developed to get better over time. Alexa uses your voice recordings and other information, including from third-party services, to answer your questions, fulfill your requests, and improve your experience and our services. When you set up your Alexa-enabled product or link third-party services with Alexa, Alexa begins processing some information, such as your music playlists. You can also help us improve the voice services by providing feedback within History in the Alexa App.

These vaguely worded disclosures do not inform the user that their voice data will be used to direct targeted advertising, and in fact are deliberately designed to create the impression that Amazon only uses its customers' voice data to execute Alexa functions.

39.     The publicly available versions of the Amazon Device Terms of Use in effect from 2016 through the present, first added a paragraph about voice services in April 2016, and even then the description of "Voice Services," contain equally nebulous phrasing. "Your Amazon Device may have features that allow you to access Alexa voice services or otherwise use your voice to perform certain tasks, such as check the weather, add a calendar entry, perform a search, or operate other connected products. When you use voice services, we may process your voice input and other information (such as location) in the cloud to respond to your requests and to improve your experience and our products and services."[13] The Terms of Use neglect to even mention the word "advertise" or any iteration thereof.

40.     Alexa's Privacy Policy, the Amazon Conditions of Use, and many other Alexa and Alexa Device Terms not only fail to disclose the way in which voice data will be used for targeted advertising, they are intentionally misleading. These vague statements falsely imply to users that Amazon will not use its massive collection of voice recordings of their voices in intimate settings

---

[13] *See, e.g.*, https://web.archive.org/web/20160308115529/https://www.amazon.com/gp/help/customer/display.html?nodeId=202002080 (last updated March 3, 2016); https://web.archive.org/web/20161220090257/https://www.amazon.com/gp/help/customer/display.html?nodeId=202002080 (last updated April 8, 2016); https://web.archive.org/web/20190503024411/https://www.amazon.com/gp/help/customer/display.html?nodeId=202002080 (last updated September 20, 2018).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

within their homes for directed advertising, cloaked in pledges of protecting user privacy and personalization.

41.     Plaintiffs could not have determined how Amazon used their data from Amazon's disclosures at the time they purchased their Alexa-Enabled Device. They therefore could not have avoided injury by making a fully informed decision not to buy the Device.

**E.     Research Confirms that neither Amazon's Terms of Use nor its Conduct are Consistent with its Public Statements**

42.     Amazon's admitted use of data derived from Alexa-made voice recordings is inconsistent with its public statements that it does "not use customers' voice recordings for targeted advertising."  By the same token, Amazon's terms of use and other representations on its website about Alexa recordings, which never disclose that Amazon uses voice recordings and associated voice data to generate customer preference profiles that are used for targeted advertising are also inconsistent with that same conduct.  This is the same conclusion reached by a majority of reasonable consumers, as was directly investigated and reported on in the February 2023 update to the Research Paper.

43.     Specifically, the authors of the Research Paper conducted an IRB-approved survey of 393 consumers in the United States, and explained the nature and purposes of the survey as follows:

> We have thus far shown that Amazon infers user interests from voice data and uses those interests to target ads to users. In this section, we conduct a user study to analyze users' expectations and comfort about the use of their data. Specifically, we try to answer two main questions: (i) based on Amazon's public statement (i.e., we "do not use voice recordings to target ads" [85]), do users expect that their voice recordings or information derived from their voice recordings would be used by Amazon for ad targeting, and (ii) whether users are comfortable with the use of interests inferred from their voice recordings or information derived from voice recordings for ad targeting.

CLASS ACTION AMENDED COMPLAINT - 16

44.     In other words, the academic researchers empirically tested Amazon's claim that its public statements about Alexa voice recordings are not false or misleading because it only disclaimed usage of "voice recordings" themselves, as opposed to information derived from voice recordings.   The results of the survey are clear: a substantial majority of consumers (63%) understand Amazon's statements expressly disclaiming usage of "voice recordings" to mean that Amazon does not use the recordings or information derived from the recordings for targeted advertising.  Importantly, the study also found "that [study] participants can differentiate between voice recordings and the information derived from voice recordings."  Although they were able to differentiate conceptually between the voice recordings themselves and the data derived from the voice recordings, the study participants still overwhelmingly understood Amazon's statements that it ""do[es] not use voice recordings to target ads" to mean it does not use voice recordings or information derived therefrom because, in the words of the study's authors, in order "to derive information from voice recordings, voice recordings need to be processed first."

**F.**     **Amazon Generates Over $30 Billion in Annual Advertising Revenue, Driven in Large Part by Targeted Ads**

45.     While Amazon is primarily known for its ubiquitous online marketplace and streaming content, advertising actually represents one of its largest and fastest growing revenue streams.   In fact, Amazon's advertising platform provides *double* the revenue of Amazon's physical stores, and Amazon earns more from advertising that it does from its subscription services, including Prime memberships.[14]

---

[14] "Amazon has a $31 billion a year advertising business," Jordan Novet, CNBC, available at https://www.cnbc.com/2022/02/03/amazon-has-a-31-billion-a-year-advertising-business.html#:~:text=Advertising%20gives%20Amazon%20twice%20the,services%2C%20which%20icnlude%20Prime%20memberships, last visited 6/8/2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

46.     Amazon generated ***$31.16 billion*** in advertising revenue in 2021 alone.  Amazon's advertising revenue for 2021 increased approximately 157% in a single year, from its 2020 annual advertising revenue of $19.77 billion.  Amazon's advertising revenue for 2021 was approximately 250% higher than its 2019 advertising revenue of $12.63 billion.[15]  Similarly, on February 3, 2022, Amazon provided figures for quarterly advertising net sales for Q32020 through Q42021, plus the percentage of Year over year growth excluding F/X ("YoY") for each quarter.  For example, Q42020 advertising net sales were 66% higher YoY than Q42019, and Q42021 advertising net sales were 33% higher YoY than Q42020.[16]

47.     How is Amazon able to maintain such impressive growth in its advertising revenue?  The answer lies in Amazon's unique ability to charge a premium from its advertising partners that is based on the data it collects from its customers.  Amazon sits in a very unique position in the global economy, as the largest online retailer in the world, and one of the top streaming content providers, Amazon has the ability to target its customers for advertising based on their preferences and behavior reflected in the data that Amazon continually harvests and maintains.  Advertisers pay Amazon a substantial premium for access (through Amazon) to that data so they can target users with advertisements that are more likely to convert into sales revenue.

1.     Amazon's Business Model Is Varied, Interconnected, and Far Reaching

48.     A business ecosystem is a network of organizations involved in the delivery of products and services through both competition and cooperation. Since its founding in 1994, Amazon has created one of the largest digital ecosystems in the world.  Through its ecosystem, Amazon is, among other things, a retailer, a technology company, a delivery company with its own fleet of planes, a go to source for entertainment, a B2B distributor, a cloud computing provider, and a growing advertising platform.  As of mid-2020, Amazon's digital ecosystem included over 200 million Echo devices, 572 physical stores, a $19 billion digital ad business, 400 private label

---

[15] *See* https://www.statista.com/statistics/259814/amazons-worldwide-advertising-revenue-development/ , last visited 6/1/2022.
[16] Businesswire, February 3, 2022, "Amazon.com Announces Fourth Quarter Results," available at https://www.businesswire.com/news/home/20220202005957/en/, last visited 6/1/2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

brands, a $40 billion revenue cloud business (Amazon Web Services), a $1.5 billion eSports business, blockchain and IoT services, healthcare initiatives, and a $40 billion R&D budget.

        2.     <u>Amazon's Targeted Advertising Revenue Is a Fundamental Part of its Business Model</u>

49.     In 2020 there were 256 million digital buyers in the United States, with that number expected to grow to 291.2 million in 2025.[17]  The sheer number of people buying products online has been a golden opportunity for Amazon to get a solid foothold in the digital advertising market and add its own advertising platform to the Amazon ecosystem.

50.     Amazon offers a variety of advertising options, both self-serve and managed by Amazon, with the ability to advertise not just on Amazon, but also off Amazon.

51.     Amazon's advertising products include "Sponsored Products," "Sponsored Brands," "Sponsored Display," "Stores," "Audio ads," "Video ads," "Custom advertising," and most importantly, "Amazon DSP," which stands for Demand Side Platform, and was rolled out by Amazon in 2014.[18]

52.     DSP is significant because unlike other forms of traditional advertising where advertisers are merely paying for space to advertise on Amazon's digital properties, DSP is a service Amazon offers to advertisers to leverage all of the data Amazon collects about its customers in order to sell targeted advertising—at a substantial premium—based on that data.

53.     DSP can include audio, video, and display ads, both on and off of Amazon-owned properties.  For example, Amazon DSP advertisers can place ads on Amazon.com, Fire TV, IMDb.com, Kindle, Amazon Music, as well as on third party advertising exchanges.

54.     Amazon DSP is not limited to advertisers who sell on Amazon.com, the flagship online retail property.  Advertisers who do not sell on Amazon.com can still use Amazon DSP.

---

[17] "Number of digital buyers in the United States from 2017 to 2025," Statista, January 3, 2022, *available at* https://www.statista.com/statistics/273957/number-of-digital-buyers-in-the-united-states/, last visited 6/1/2022.

[18] "What does Amazon ads offer?" available at https://advertising.amazon.com/en-us/library/guides/basics-of-success-understanding-amazon-advertising/?ref_=a20m_us_libr, last visited 5/31/2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

55. Programmatic advertising through Amazon DSP is a way to automatically buy and optimize digital advertising campaigns, generally through Real-Time Bidding ("RTB") auctions where ads are bought at the same time as a visitor loads a website, or opens an ad-supported app or streaming service.  It is used to purchase and place digital ad inventory across the web, on mobile devices, apps, videos, and on social media.

56. RTB auctions also use headline bidding, a technology that allows publishers to request bids from multiple demand sources simultaneously and then send the bids to an ad server to conduct the auction, and render the ad with the winning bid on the site.[19]

57. By the end of 2021, 88% of all digital display marketing spend was via programmatic advertising.  Roughly 90% of programmatic advertising is done through RTB.[20]

58. RTB auctions are often done on ad exchanges, and Amazon DSP is connected to various third-party ad exchanges.

59. Ad exchanges are online marketplaces where advertisers, agencies, demand-side platforms such as Amazon DSP, publishers, and supply-side platforms can simultaneously bid on digital advertising inventory from various publishers.[21]

60. When a visitor accesses a website connected to the ad exchange, an auction signal is sent to the ad exchange, which then asks Amazon DSP if their advertisers have any ads that might fit the placement.  If Amazon DSP does, it sends a signal to the exchange to enter an RTB auction with other advertisers to compete for the ad placement.  The winning bidder's ad is rendered on the website.

61. RTB transactions are made in the time it takes to load a webpage; around one-tenth of a second.

---

[19] *Id.*
[20] "What is Programmatic Advertising?  The Ultimate 2022 Guide," last updated May 31, 2022, *available at* https://www.match2one.com/blog/what-is-programmatic-advertising/, last visited 6/1/2022.
[21] "A beginner's guide to programmatic advertising," March 11, 2021, in What is Programmatic Advertising? A Complete 2022 Guide/Amazon Ads, *available at* https://advertising.amazon.com/blog/programmatic-advertising, last visited 5/31/2022.

CLASS ACTION AMENDED COMPLAINT - 20

62.     RTB makes it possible for advertisers to place hundreds of thousands of ads online without needing to individually reach out to online publishers.  Billions of RTB bid requests are made each day.

**G.     The Growth of Amazon's Business Model Depends on Amazon Continuing to Collect Vast Amounts of Customer Data.**

63.     A primary advantage of using a digital ecosystem is the ability to gather data about all aspects of the ecosystem, including processes, customers, and transactions.

64.     Data is a key driver for any digital ecosystem, and particularly Amazon's ecosystem.  Reportedly, Amazon managers have hung signs outside their offices that said: "In God we trust.  The rest, bring me data."

1.     Amazon Offers Something No Other Digital Advertising Platform Has – The Unique Data Amazon Has Collected from its Customers, Including Voice Data from Alexa-Enabled Devices.

65.     Amazon has the largest database of online shoppers in the world, with information on their browsing habits, purchasing decisions, even life stages and life changes over time.

66.     Amazon uses the personal information it collects from customers to create profiles or dossiers of each customer.

67.     Amazon leverages the customer dossiers for various purposes, including insights into customers' practices and desires in order to sell, upsell, design new products and services, and even guide customer expectations.

68.     Amazon also leverages customers' personal data to support the Amazon DSP advertising platform, including using the data to target ads at the customer whether they are on Amazon, social media, streaming a video, or on a third-party website.

69.     Advertisers who sign up to use Amazon's advertising platform can also leverage Amazon customers' personal data, and Amazon expects them to.

70.     The ability to leverage Amazon customer data to target ads, not just on Amazon but for placing ads on third party websites, is what sets Amazon's advertising platform apart from its competitors.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

71.     Amazon charges a premium for access to Amazon's advertising platform because of Amazon's superior ability to target ads to customers.

72.     Amazon puts access to Amazon's treasure trove of customer data front and center when explaining the unique benefits of Amazon DSP.

73.     In a March 11, 2021 article titled "A beginner's guide to programmatic advertising," Amazon explains that "Amazon DSP is unique because it enables programmatic buying of display, video, audio, and in-app ads both on and off Amazon.  Plus, Amazon DSP gives you access to audiences and insights from the millions of shoppers across Amazon's website and physical stores."[22]

74.     Amazon also tells advertisers that with Amazon DSP, they can "[u]se exclusive insights and shopping signals to connect with the most relevant audiences on and off Amazon."[23]

75.     Amazon customer data in Amazon DSP is tied to individualize profile data, allowing advertisers to break down audience segments based on a variety of options like buyer intent.  Amazon DSP can help advertisers target future buyers through consumer habits around specific categories of products or specific products, and even through assumed future intent based on past buying history.

76.     Advertisements serve different objectives which ultimately funnel down to the customer making a purchase.

77.     When using Amazon DSP, advertisers define the audience they want to target, and the level of the advertising funnel they want to reach, using data and analytical tools from Amazon.

---

[22] "A beginner's guide to programmatic advertising," March 11, 2021, in What is Programmatic Advertising? A Complete 2022 Guide/Amazon Ads, *available at* https://advertising.amazon.com/blog/programmatic-advertising, last visited 5/31/2022.
[23] "Amazon DSP, Your brand in new places." *available at* https://advertising.amazon.com/en-us/solutions/products/amazon-dsp?ref=nb_sl_27sts99g7xkj_p_sspa_us_g_ggl_ct_592193285267&gclid=EAIaIQobChMIntHp4N6K-AIVU4BaBR1lJQc7EAAYASAAEgJ-U_D_BwE last visited 5/31/2022.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

78.     Many types of ads are limited to one or two parts of the advertising funnel.  Amazon DSP, in contrast, was designed by Amazon to "live throughout the funnel."[24]



25

79.     Because Amazon has personal data from all of its customers, including data on their shopping habits, Amazon can extrapolate from that data to determine customers' demographics, lifestyle choices, and interests with a high level of accuracy.

80.     Using Amazon's customer data as the underpinning, advertisers can target ads based on behavior, lifestyle, demographics, whether the customer is in-market for a product, current customer context, re-marketing, and audience lookalikes.[26]

81.     Behavior targeting focuses on customers who have carried out specific activities.

82.     Lifestyle targeting shows ads relevant to people who habitually buy from a particular brand-relevant category, for example, luxury bath products.

83.     Demographic targeting lets advertisers target ads based on age, gender, income, or location.

84.     Device targeting lets advertisers target ads to specific end-user devices.

---

[24] "Amazon Explained: DSP Targeting Capabilities," 2020, Podean Marketplace Marketing, *available at* https://www.podean.com/amazon-explained-dsp-targeting/, last visited 6/1/2022.
[25] *Id.*
[26] "Amazon DSP Targeting Options Explained," Victor Malachard, Nozzle, *available at* https://insights.nozzle.ai/amazon-dsp-targeting, last visited 5/31/2022.

CLASS ACTION AMENDED COMPLAINT - 23

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

85.     In-market targeting targets people in the market for specific products or services, for example ads for cat toys being targeted to cat owners.

86.     Contextual targeting places ads based on what a user is browsing right then. Remarketing targets shoppers who have visited an advertiser's site before, or looked at but not purchased the advertiser's product on Amazon, or browsed products similar to the advertiser's with the goal of getting them to purchase the advertiser's product.

87.     Audience lookalike targeting targets ads to Amazon customers who are similar to the advertiser's current customers.

88.     Each of the targeting options described above depends on the personal data Amazon has collected and continues to collect from all Amazon customers to be effective.  Amazon is able to charge a premium to advertisers for ad targeting because of Amazon's exclusive access to its customers' data.  Unlike certain other activity that Amazon discloses will be monitored and used for targeted advertising, however, Amazon has never disclosed or obtained user authorization for use of their Alexa-captured voice data for targeted advertising purposes.  Instead, Amazon deliberately misleads its Alexa customers and has publicly disclaimed usage of voice data for targeted advertising because Amazon knows that consumers are very concerned with how the voice data recorded by Alexa in their homes and around their personal conversations is used.

**H.     Amazon Used Plaintiff Gray's Alexa-Captured Voice Data to Target Him With Ads Without His Consent**

89.     Plaintiff James Gray has been a registered user of Alexa products since 2018.

90.     Currently, Plaintiff Gray has 4 Alexa-Enabled Devices, all various models of the Echo product, manufactured by Amazon.  All 4 devices are registered to the same Amazon account that was established by Plaintiff Gray.

91.     Each of the four devices is typically active 24 hours a day, 7 days a week.  Plaintiff Gray estimates that he has spoken more than 1,000 commands or questions to Alexa since he became a registered user.  Plaintiff Gray has never used any of the Alexa-Enabled Devices in his home to make a purchase.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

92.     Plaintiff Gray has on multiple occasions had an experience where he spoke a question or command to Alexa and was shortly thereafter served an advertisement by Amazon that was closely related to the subject of the command or question.

93.     Plaintiff Gray has never consented to the usage of his voice data by Amazon for the purpose of targeted advertising.

**I.      Amazon Used Plaintiff Horton's Alexa-Captured Voice Data to Target Him With Ads Without His Consent**

94.     Plaintiff Scott Horton has been a registered user of Alexa products for the last 5-7 years.

95.     Currently, Plaintiff Horton has 4 Alexa-Enabled Devices, including an Echo, Echo Dot, Sonos Move, and Alexa sound bar.  All 4 devices are registered to the same Amazon account that was established by Plaintiff Horton.

96.     Each of the four devices is typically active (listening for voice prompts) 24 hours a day, 7 days a week.  Plaintiff Horton estimates that he has spoken more than 3,000 commands or questions to Alexa since he became a registered user.  Plaintiff Horton only infrequently used any of the Alexa-Enabled Devices in his home to make a purchase.

97.     Plaintiff Horton has on multiple occasions had an experience where he spoke a question or command to Alexa and was shortly thereafter served an advertisement by Amazon that was closely related to the subject of the command or question.

98.     Plaintiff Horton has never consented to the usage of his voice data by Amazon for the purpose of targeted advertising.

EQUITABLE TOLLING

99.     Amazon took active steps to conceal the fact that it uses Alexa-captured voice data to serve targeted ads to its customers without their knowledge or consent.  The details of Amazon's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class members, and await discovery.  When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

situation, retaining counsel, and pursuing their claims.  Amazon fraudulently concealed its above-described wrongful acts.  Should such be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## CLASS ALLEGATIONS

100.    **Class Definition**.  Plaintiffs seek certification of the Class set forth herein pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), as applicable, and (c)(4).  Specifically, Plaintiffs seek class certification of all claims for relief herein on behalf of a Class defined as follows:

> All persons residing in the United States who are or have been registered users of an Alexa-Enabled Device and were during that time served targeted advertisements by Amazon.

Excluded from the Class are: (a) any judge or magistrate judge presiding over this action and members of their staff, as well as members of their families; (b) Amazon, Amazon's predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which Amazon has a controlling interest, as well as Amazon's current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Class; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Amazon; and (f) the legal representatives, successors, and assigns of any such excluded persons.

101.    **Ascertainability.**  The proposed Class is readily ascertainable because the Class is defined using objective criteria to allow Class members to determine if they are part of the Class.  Further, the Class can be readily identified through records that Amazon maintains.

102.    **Numerosity (Rule 23(a)(1)).**  The Class is so numerous that joinder of individual members herein is impracticable.  The exact number of Class members, as herein identified and described, is not known, but publicly available data indicates that in 2020, there were already over 46 million Alexa-Enabled Devices installed in the United States.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

103.   **Commonality (Rule 23(a)(2)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class members, including the following:

    a.   Whether Amazon engaged in the activities and practices referenced above;

    b.   Whether Amazon had authorization from Alexa-Enabled Device users to use their voice data in connection with Amazon's advertising platform;

    c.   Whether Amazon should retain the profits Amazon generated using Plaintiffs' and Class members' private and personally identifiable voice data;

    d.   What is the economic value of Alexa-Enabled Device users' voice data;

    e.   Whether Plaintiffs and the other Class members were injured and sustained damages or other losses as a result of Amazon's activities and practices referenced above, and, if so, in what amount;

    f.   Whether Amazon unjustly profited from their activities and practices referenced above, and, if so, in what amount;

    g.   Whether Amazon's activities and practices referenced above constitute a violation of the Washington Consumer Protection Act;

    h.   Whether Amazon's activities and practices referenced above constitute a violation of the right of publicity pursuant to RCW 63.60.010 et seq.;

    i.   Whether Amazon's activities and practices referenced above constitute an invasion of privacy;

    j.   Whether Amazon's activities and practices referenced above breached the implied covenant of good faith and fair dealing;

    k.   What is the appropriate injunctive relief to ensure that Amazon no longer unlawfully: (a) uses private and personally identifiable Alexa-Enabled Device users' voice data to create demand for and use of Amazon's advertising platform; (b) causes the diminution in value of Alexa-Enabled Device users' private and

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

personally identifiable voice data; and (c) profiles and targets, based on the above activities, Alexa-Enabled Device users with advertisements.

l.      Whether Plaintiffs and Class members are entitled to damages or injunctive relief.

104.    **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other Class members' claims, because, among other things, Plaintiffs and the other Class members sustained similar injuries as a result of Amazon's uniform wrongful conduct and their legal claims all arise from the same events and wrongful conduct by Amazon.

105.    **Adequacy (Rule 23(a)(4)).** Plaintiffs will fairly and adequately protect the interests of the other Class members. Plaintiffs' interests do not conflict with the interests of the other Class members, and Plaintiffs have retained counsel experienced in complex class action and data privacy litigation to prosecute this case on behalf of the Class.

106.    **Predominance & Superiority (Rule 23(b)(3)).** In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining this action as a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class members, and a class action is superior to individual litigation and all other available methods for the fair and efficient adjudication of this controversy. The amount of damages available to Plaintiffs is insufficient to make litigation addressing Amazon's conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

107.    **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(b)(2). Amazon has acted or refused to act on grounds that apply generally to the Class, making final declaratory and/or injunctive relief appropriate with respect to the Class as a whole.

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

108.   **Particular Issues (Rule 23(c)(4)).** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Plaintiffs' claims consist of particular issues that are common to all Class members and are capable of class-wide resolution that will significantly advance the litigation.

## CLAIMS AND VIOLATIONS ALLEGED

### COUNT I

**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(Against All Defendants, On Behalf of Plaintiffs and the Nationwide Class)**

109.   Plaintiffs re-allege and incorporate the allegations in paragraphs 1 to 108 of this Complaint as if fully restated herein.

110.   Plaintiffs brings this claim individually and on behalf of the Class.

111.   Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.

112.   The duty of good faith and fair dealing obligates the parties to cooperate with each other so that each may obtain the full benefit of performance.

113.   The duty of good faith and fair dealing also arises when the contract gives one party discretionary authority to determine a contract term.

114.   In dealings between Amazon and its users, Amazon is invested with discretionary power affecting all of the contractual terms between Amazon and its users.

115.   Amazon uses its discretionary power in deciding what to disclose and what not to disclose with respect to Amazon's use of Alexa-captured voice data in the various documents comprising the contractual agreement between Amazon and people, including Plaintiffs and Class members, who use or access Alexa.

116.   People who access or use Alexa or Alexa-Enabled Devices are subject to a complex web of contractual terms drafted and imposed by Amazon, including the Amazon.com Privacy Notice, Alexa Terms of Use, and Amazon Device Terms of Use.  Amazon also incorporates its answers to Frequently Asked Questions about how Alexa works, and privacy concerns regarding

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

the collection and use of users' voice data into terms applicable to those who user or access Alexa.[27]

117.    Amazon purports to respect and protect its users' privacy.

118.    The versions of the Amazon.com Privacy Notice in effect on or about the time Plaintiffs initially registered their Alexa-Enabled Devices open with the promise that: "Amazon.com knows that you care how information about you is used and shared, and we appreciate your trust that we will do so carefully and sensibly.."[28]  Nowhere does the Amazon.com Privacy Notice disclose that Amazon uses Alexa-captured voice data for the purpose of targeted advertising.

119.    The Amazon Device Terms of Use do not include targeted advertising in the description of how Amazon uses users' Alexa-captured voice data; instead further cementing Amazon's implied promise that Amazon only uses Alexa users' voice data to execute Alexa functions in the Alexa and Alexa Device FAQs, by telling users:

> 1. Features and software
>
> ***
>
> c. Voice Services. Your Amazon Device may have features that allow you to access Alexa voice services or otherwise use your voice to perform certain tasks, such as check the weather, add a calendar entry, perform a search, or operate other connected products. When you use voice services, we may process your voice input and other information (such as location)

---

[27] _See, e.g._, Alexa and Alexa Device Terms, *available at* https://web.archive.org/web/20160409100358/https://www.amazon.com/gp/help/customer/display.html?nodeId=201602230 (captured 4/9/2016); https://web.archive.org/web/20180103150928/https://www.amazon.com/gp/help/customer/display.html?nodeId=201602230 (captured 1/3/2018) (both last visited March 2, 2023).

[28] Available at https://web.archive.org/web/20170603043007/https://www.amazon.com/gp/help/customer/display.html?nodeId=468496#GUID-1B2BDAD4-7ACF-4D7A-8608-CBA6EA897FD3__SECTION_87C837F9CCD84769B4AE2BEB14AF4F01 (in effect September 30, 2016 through August 27, 2017) (last visited March 1, 2023); https://web.archive.org/web/20200909115320/https://www.amazon.com/gp/help/customer/display.html?ie=UTF8&nodeId=16015091 (in effect August 28, 2017 through December 31, 2019) (last visited March 1, 2023).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

in the cloud to respond to your requests and to improve your experience and our services. [29]

120.    Amazon's contractual promise that Amazon's use of Alexa users' voice data was limited to assisting in the execution of Alexa functions aligned with its public statements that Amazon did not use voice data for targeted advertising.

121.    Despite its contractual privacy promises that Amazon only uses Alexa users' voice data in connection with the execution of Alexa functions, Amazon took actions contrary to those contractual promises to deprive Plaintiffs and Class members of the benefits of their contract with Amazon.

122.    Amazon's use of Alexa users' voice data to inform targeted advertising was objectively unreasonable given Amazon's privacy promises.

123.    Amazon's conduct in using Alexa users' voice data to inform targeted advertising evaded the spirit of the bargain made between Amazon and the Plaintiffs and Class members.

124.    Amazon's conduct in this case abused its discretionary power to specify terms—in particular, Amazon's failure to disclose that it was using Alexa users' voice data to inform targeted advertising or obtain users' consent to the same.

125.    As a result of Amazon's misconduct and breach of its duty of good faith and fair dealing, Plaintiffs and the Class members suffered damages. Plaintiffs and the Class members did not receive the benefit of the bargain for which they contracted and for which they paid valuable consideration in the form of their personal information, which, as alleged above, has ascertainable value to be proven at trial.

---

[29] *Available at*
https://web.archive.org/web/20161220090257/https://www.amazon.com/gp/help/customer/display.html?nodeId=202002080 (last visited March 2, 2023).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

**COUNT II**

**Violation Of The Washington Consumer Protection Act, Wash. Rev. Code § 19.86 et seq.**
**(Against All Defendants, On Behalf of Plaintiffs and the Nationwide Class)**

126.     Plaintiffs re-allege and incorporate the allegations in paragraphs 1 to 108 of this Complaint as if fully restated herein.

127.     Plaintiffs bring this claim individually and on behalf of the Class.

128.     The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code §19.86.020.

129.     The elements of a Washington CPA claim are (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) with a public interest impact, (4) an injury to plaintiff in his or her business or property, and (5) a causal relationship between the unfair or deceptive act and the resulting injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986).

130.     Amazon has committed unfair acts and practices in the conduct of trade or commerce, in violation of Wash. Rev. Code §19.86.020, by using the private information of Plaintiffs and the Class without their consent, including the voice data of Plaintiffs and the Class.

131.     Amazon committed its unfair acts and practices in the context of trade or commerce. Amazon uses the voice data it collected from Plaintiffs and the Class for business purposes affecting interstate commerce, including for profit, by using the voice data to sell advertising services at a premium to third parties throughout the country who purchase advertising services through Amazon's advertising platform.

132.     Amazon also sells its Alexa-Enabled Devices in interstate commerce in markets across the nation. Alexa-Enabled Device owners can use their Alexa-Enabled Device to make purchases, including through the Amazon e-commerce marketplace.

133.     The public interest is harmed by Amazon's conduct in using Plaintiffs' and the Class's voice data to sell targeted advertising to third parties at a premium, without Plaintiffs' and

CLASS ACTION AMENDED COMPLAINT - 32

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

the Class's consent, in violation of their fundamental privacy interests in controlling access to and dissemination of their personal data.  In addition, to the extent that Amazon uses Plaintiffs' and the Class's voice data directly or indirectly for profit or other benefit, Amazon is deriving an unfair competitive advantage as a result.

134.     Plaintiffs and the Class members have been injured by paying more for Alexa-Enabled Devices than they would have been willing to pay were it fully disclosed that Amazon was using Plaintiffs' and the Class's voice data collected from their Alexa-Enabled Devices to develop and sell the advertising services on Amazon's advertising platform and target ads to Plaintiffs and Class Members.  Plaintiffs and Class Members have been further injured by having their voice data and the inferences gleaned from that data used by Amazon for Amazon's personal gain, including through the development and sale of targeted advertising through Amazon's advertising platform, and without Plaintiffs' and the Class's consent.

135.     Plaintiffs and the Class expected their voice data collected by Amazon through their Alexa-Enabled Devices to be used to answer questions posed and fulfill requests made while they were using their Alexa-Enabled Devices.  Plaintiffs and the Class did not expect that Amazon would use their voice data and/or the inferences gleaned from that data for profit, and to sell access to its advertising platform to third parties at a premium and target advertising to Plaintiffs and the Class.  These considerations are material to Plaintiffs and the Class as reasonable consumers.  Had Plaintiffs and the Class known how Amazon would use their voice data, the Alexa-Enabled Devices they purchased would have been worth less than a comparable product that performed the same functions without subjecting the consumer to constant monitoring of their speech for targeted advertising purposes.

136.     Plaintiffs and Class members have recognized property interests in their voices and the related right to not have their voices used by others without their consent. RCW 63.60.010, 63.60.050. Accordingly, Plaintiffs and Class members were also deprived of the value inherent to their personal data used by Amazon in connection with Amazon's advertising platform and its sale of targeted ads without Plaintiffs' and the Class's consent.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

137.    A market exists for human individuals' voice recordings, and for the information included in human individuals' voice recordings, and entities and companies recognize that they have to pay for such information.  Plaintiffs and Class members have a property interest in their personal information, including the personal information collected through their voice data. Plaintiffs and Class members were deprived of the appropriate consideration and compensation that should have been paid to them when Amazon used their personal information from their voice data to profit in connection with Amazon's advertising platform.

138.    Amazon's actions are unfair as they offend public policy as established by statute, and are otherwise unethical, oppressive, and unscrupulous.

139.    There is a causal link between the unfair acts and deceptive practices complained of and the injuries alleged.  Plaintiffs and Class members' property interest in their voices and voice recordings were infringed by Amazon's unfair acts in utilizing Plaintiffs' and Class members' voice recordings for targeted advertising. Plaintiffs and Class members' property interests were infringed as a result of Amazon's misleading practices in failing not only to disclose that they were using Alexa-captured voice recordings for this purpose, but also affirmatively stating that it was not using the recordings for this purpose.

140.    Plaintiffs and the Class are entitled to damages, treble damages, and reasonable attorneys' fees pursuant to Wash. Rev. Code § 19.86.090.

## COUNT III
### Invasion of Privacy – Intrusion on Seclusion
### (Against All Defendants, On Behalf of Plaintiffs and the Nationwide Class)

141.    Plaintiffs re-allege and incorporate the allegations in paragraphs 1 to 108 of this Complaint as if fully restated herein.

142.    Plaintiffs bring this claim individually and on behalf of the Class.

143.    The elements of a claim for intrusion on seclusion are: (1) that the defendant deliberately intruded; (2) into the plaintiff's solitude, seclusion, or private affairs; (3) in a manner that would be highly offensive to a reasonable person.

CLASS ACTION AMENDED COMPLAINT - 34

144.    Amazon's Alexa-Enabled Devices are designed to be used in Amazon customers' private spheres, including in their homes.

145.    Amazon's Alexa-Enabled Devices are designed to be incorporated into Amazon customers' personal lives and private affairs.

146.    Alexa-Enabled Devices can be used to control the lights, temperature, and doors in users' homes; answer questions, including those of a sensitive, private, and personal nature; play music to set or reflect the mood in users' homes and other private spaces; set and start daily routines for users; call friends and family who also have Alexa-Enabled Devices; and, of course, let users make purchases from the privacy of their homes.

147.    Plaintiffs and Class members have communicated personal and private information in interactions with their Alexa-Enabled Devices, which was then collected and captured by Amazon as voice data.

148.    Plaintiffs and Class members reasonably expected that Amazon would not access, use, or disclose their voice data for purposes other than to answer questions posed and fulfill requests made while they were using their Alexa-Enabled Devices.

149.    Amazon fostered Plaintiffs' and Class members' expectation that Amazon would not access, use, or disclose their voice data for purposes other than to facilitate Plaintiffs' and Class members' use of their Alexa-Enabled Devices.  For example, Amazon explains Alexa's purpose as: "Alexa makes your life easier, more meaningful, and more fun by letting you voice control your world."  Amazon also claims that users "have transparency and control over your Alexa experience."

150.    Plaintiffs and Class members did not expect or know that Amazon would collect and use their voice data and the inferences and impressions gleaned from that data to create detailed, in-depth dossiers of their characteristics, lives, and habits.

151.    Plaintiffs and Class members did not consent to Amazon's collection and use of their voice data and the inferences and impressions gleaned from that data to create detailed, in-depth dossiers of their characteristics, lives, and habits.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

152.    Plaintiffs and the Class did not expect or know that Amazon would collect and use their voice data and the inferences and impressions gleaned from that data to sell advertising services to third parties, or to target advertising to Plaintiffs and Class members.

153.    Plaintiffs and Class members did not consent to Amazon's collection and use of their voice data and the inferences and impressions gleaned from that data to sell advertising services to third parties, or to target advertising to Plaintiffs and Class members.

154.    Amazon's intrusion into Plaintiffs' and Class members' solitude, seclusion, and private affairs under the guise of collecting voice data through Alexa-Enabled Devices for Plaintiffs' and Class Members' benefit, while actually collecting Plaintiffs' and Class members' voice data to create dossiers of users' characteristics, lives, and habits in order to sell advertising services to third parties, and target advertising to Plaintiffs and Class members, is highly offensive to a reasonable person.

155.    Amazon unlawfully invaded the privacy rights of Plaintiffs and Class members by engaging in the conduct described above.

156.    As a result of the invasion of privacy caused by Amazon, Plaintiffs and the Class members suffered and will continue to suffer damages and injury as set forth herein.

157.    Plaintiffs and the Class members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution, injunctive relief, reasonable attorneys' fees and costs, and any other relief that is just and proper.

**COUNT IV**
**Infringement of Right of Personality Pursuant to RCW 63.60.010 et seq.**
**(Against All Defendants, On Behalf of Plaintiffs and the Nationwide Class)**

158.    Plaintiffs re-allege and incorporate the allegations in paragraphs 1 to 108 of this Complaint as if fully restated herein.

159.    Plaintiffs brings this claim individually and on behalf of the Class.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

160.     Washington's Personality Rights Statute provides that "Every individual or personality has a property right in the use of his or her name, voice, signature, photograph, or likeness." RCW 63.60.010.

161.     Washington's Personality Rights Statute applies to all Plaintiffs and Class members nationwide by virtue of Amazon's choice of law clauses designating Washington law shall apply to all disputes. Further, the Statute expressly applies "regardless of the place of domicile" of the individual. RCW 63.60.010.

162.     Plaintiffs and Class members have recognized property rights in their voices.

163.     "Any person who uses or authorizes the use of a living or deceased individual's or personality's name, voice, signature, photograph, or likeness, on or in goods, merchandise, or products entered into commerce in this state, or for purposes of advertising products, merchandise, goods, or services, or for purposes of fund-raising or solicitation of donations, or if any person disseminates or publishes such advertisements in this state, without written or oral, express or implied consent of the owner of the right, has infringed such right. An infringement may occur under this section without regard to whether the use or activity is for profit or not for profit." RCW 63.60.050.

164.     Amazon used Plaintiffs' and Class members' voices in Washington for the purpose of advertising products, merchandise, goods, or services when they collected and captured voice data and utilized that data to create dossiers of users' characteristics, lives, and habits in order to sell advertising services to third parties, and target advertising to Plaintiffs and Class members.

165.     Plaintiffs' and Class members did not consent to Amazon's use of their voice data for the purpose of advertising.

166.     The short clips of speech that are present in the voice data utilized by Amazon for the purpose of advertising do not contain a sufficient amount of production authorship to be afforded copyright protection.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

167.    Amazon received substantial monetary benefits from third-party advertisers for the use of Plaintiffs' and Class members' voice data for targeted advertising to Plaintiffs and Class members.

168.    Plaintiffs and Class members are entitled to injunctive relief to prevent and restrain Amazon's continued unauthorized use of Plaintiffs' and Class members' voice data.

169.    Plaintiffs and Class members are further entitled to actual damages or statutory damages in the amount of $1,500 (whichever is greater), and all profits Amazon received from its unauthorized use of Plaintiffs and Class members' voice data, in an amount to be proven at trial.

<strong>REQUEST FOR RELIEF</strong>

170.    WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment in its favor and grant relief against Defendant Amazon as follows:

(a)    Issuing an injunction that Amazon immediately (i) cease and desist from all unauthorized collection and usage of voice data, (ii) revise its disclosures to accurately and clearly describe Amazon's voice data collection and usage practices, (iii) require users to opt-in (pursuant to clear and accurate disclosures) before serving them with targeted ads based on their voice data, and (iv) delete all voice data that was illegitimately collected;

(b)    Awarding monetary damages;

(c)    Ordering Amazon to disgorge all profits that it illegally obtained by and through its illegal conduct, and used to further fund or promote the illegal conduct or that constituted capital available for that purpose;

(d)    Awarding Plaintiffs their attorneys' fees and litigation costs; and,

(e)    Awarding such other relief as may be available and appropriate under the law or in equity.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### JURY DEMAND

Plaintiffs demand a trial by jury for all claims upon which a jury trial is available.

Dated:  March 3, 2023

Respectfully submitted,

*s/ Rebecca L. Solomon*, WSBA #51520
Rebecca L. Solomon
*s/ Jason T. Dennett*, WSBA #30686
Jason T. Dennett
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Ste 1700
Seattle, WA 98101-3147
Tel:  (206) 682-5600
Fax:  (206) 682-2992
Email: rsolomon@tousley.com
     jdennett@tousley.com

Adam J. Levitt (admitted *Pro Hac Vice*)
Amy E. Keller (admitted *Pro Hac Vice*)
Nada Djordjevic (admitted *Pro Hac Vice*)
Sharon Cruz (admitted *Pro Hac Vice*)
**DiCELLO LEVITT LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Tel:  (312) 214-7900
Fax:  (312) 253-1443
Email: alevitt@dicellolevitt.com
     akeller@dicellolevitt.com
     ndjordevic@dicellolevitt.com
     scruz@dicellolevitt.com

David Straite (admitted *Pro Hac Vice*)
Corban Rhodes (admitted *Pro Hac Vice*)
485 Lexington Ave., Ste. 1001
New York, NY 10017
Tel: (646) 933-1000
Email: dstraite@dicellolevitt.com
     crhodes@dicellolevitt.com

*Co-Counsel for Plaintiffs and the Proposed Class*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600
FAX 206.682.2992