The Honorable Barbara Rothstein

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES GRAY and SCOTT HORTON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., a Delaware corporation, and AMAZON.COM SERVICES LLC, a Washington limited liability company,

Defendants.

NO. 2:22-cv-00800 BJR

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT- 1
2:22-cv-00800 BJR

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

The Court should grant Plaintiffs' motion for leave to amend their complaint because the proposed amended complaint asserts new allegations which cure the deficiencies identified by the Court and provide the notices applicable when Plaintiffs first registered their Alexa devices.

## ARGUMENT

### A. Amazon did not adequately disclose its use of voice data in its 2016 Terms and Notices.

Amazon concedes that the Court can and should consider the terms in effect when Plaintiffs registered their devices. Amazon incorrectly posits, however, the 2016 terms bind consumers to subsequent changes in the terms based solely on their continued use of Alexa devices. This provision is without legal effect in the absence of evidence that consumers were either actually or constructively aware of such revisions and continued to use the devices. *See Sifuentes v. Dropbox, Inc.*, No. 20-CV-07908-HSG, 2022 WL 2673080, at *4 (N.D. Cal. June 29, 2022) (contract which purported to grant right to change terms at will with acceptance deemed to occur based on continuing use was "irrelevant to determining whether he had actual or constructive notice of the post- 2011 terms of service."); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (acknowledging that browsewrap agreements through which "the user supposedly manifests assent to those terms simply by continuing to use the website" are generally less enforceable). In the absence of notice that the terms of use have changed, Amazon cannot preemptively bind users to future terms. Users are entitled to actual or constructive notice of such changes to be given an opportunity to stop using their Alexa devices when the terms become unpalatable. Amazon deprived users of this option.

That Amazon changed these terms without adequate notice is itself a breach of the duty of good faith and fair dealing and an unfair or deceptive act under the Washington CPA.

The 2016 terms also did not, as Amazon contends, adequately disclose that it was using voice data to create targeted advertisements. The 2016 terms disclosed that Amazon collected data from various sources—none of which expressly identified Alexa recordings and instead

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
LEAVE TO FILE AMENDED COMPLAINT- 2
2:22-cv-00800 BJR

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

focused on Amazon.com and other website interactions, mobile apps, emails, and direct correspondence with Amazon customer service. PAC ¶¶ 35–36. At most, Amazon disclosed that it "*might* receive information about you from other sources." *Id*. at ¶ 35 (emphasis added). Nowhere does Amazon claim that "voice data" or "voice recordings" from Alexa are included in the sources of information used to create Interest-Based Ads.

Amazon contends that it adequately disclosed its use of voice data because it stated that "Alexa processes and retains your voice input and other information . . . in the cloud to respond to your requests and improve our services," but Amazon fails to explain why a customer would reasonably interpret "improve our services" to mean "create targeted advertisements." Instead, Amazon relies on the 2016 Privacy Notice's generic representation that it uses "information you . . . give us in any other way" for "responding to requests, customizing future shopping for you, improving our stores, and communicating with you" and "to allow third parties to personalize advertisements we display to you." But again, Amazon did not disclose that Alexa voice-captured data was among the sources of information from which it generates third-party targeted advertising. Amazon could have included Alexa voice data in the disclosure identifying the scope of information gathered or explicitly identified it as a source of information from which targeted advertisements are generated; it failed to do so. Instead, it left consumers with a web of convoluted terms and required them to piece together what information was gathered and how and when it was used.  At best, there is an open question of fact as to the reasonable interpretation of Amazon's disclosures that cannot be resolved in Amazon's favor at this stage.

Terms of use cannot be construed in a vacuum, but must be interpreted not only how the consumer would construe them substantively, but also how the consumer would encounter and manifest assent to them:  how likely is a consumer to locate the terms? Does the registration process require multiple steps and multiple documents to understand the full scope of the terms? Is the consumer required to review them prior to accessing the website or service? How

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
LEAVE TO FILE AMENDED COMPLAINT- 3
2:22-cv-00800 BJR

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

are interrelated notices and terms linked and made available? The purpose of these inquiries is to determine whether the consumer had actual or constructive notice of the terms. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855–56 (9th Cir. 2022) ("Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."); *Weimin Chen v. Sierra Trading Post, Inc.*, No. 2:18-CV-1581-RAJ, 2019 WL 3564659, at *2 (W.D. Wash. Aug. 6, 2019). Courts routinely reject the application of terms that require multi-step process of clicking links because such terms are insufficient to put the consumer on constructive notice. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014); *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219–21 (9th Cir. 2019). At the pleading stage, the Court must make all reasonable inferences in Plaintiffs' favor; these inferences lead to the conclusion that consumers do not have constructive knowledge of Amazon's malleable policies, even accepting that they say what Amazon contends they do (which they do not). This is particularly true given the sheer number of interwoven terms and notices, combined with the fact that Alexa use occurs *outside* of Amazon's website where the terms are available. Alexa users would not, while using Alexa, have a reason to search through or stumble across the applicable terms through oral prompts. *Cf. Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 395 (9th Cir. 2020) (user agreed to terms every time logged into account because "By continuing past this page, you agree to our Terms of Use" was stated three lines below login button).

Moreover, Amazon does not disclose to consumers that it uses voice recordings that are more than just audio analogs of website text inputs. While there may be a small difference between searching for toilet paper and clicking "Buy" on Amazon's website (e.g., the kind of information Amazon discloses that it uses for interest-based ads) and saying "Alexa, buy toilet

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
LEAVE TO FILE AMENDED COMPLAINT- 4
2:22-cv-00800 BJR

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

paper," consumers use Alexa for more than transactional shopping, for example, to make queries that would otherwise be typed into a web browser, call friends and family, or to control the lights or temperature in their homes. PAC ¶¶ 145–47. Nothing in the terms or notices discloses that non-transactional interactions constitute "information" given to Amazon that would be used for marketing purposes. And although Amazon contends that it only uses transaction records from voice data, the allegations in the proposed Amended Complaint suggest otherwise as both Plaintiffs allege that they have had been presented with third-party advertising related to non-transactional voice commands and questions. PAC ¶¶ 91–92, 96–97.

Finally, Plaintiffs' claims are not time-barred - they arise from Amazon's current and recent conduct related to Amazon's material omissions going back to 2016. The statute of limitations has not expired for claims for ongoing injuries suffered in 2018 and after. But, Amazon is also liable for its conduct prior to 2018 based on its failure to disclose that it uses Alexa-captured voice data to serve targeted advertisements. PAC ¶ 99. Amazon actively concealed, and indeed publicly contradicted, this information, which was not publicly available until it was revealed by researchers and Amazon admitted the practice, as alleged in the proposed Amended Complaint. PAC ¶¶ 29–32. The proposed Amended Complaint further sets forth how it was concealed (through Amazon's byzantine web of terms and through public statements that misrepresented Amazon's actual practices, ¶¶ 20–28, 33–41 and what was concealed (Amazon's use of voice data to generate targeted ads ¶¶ 29–32, 42–44).

**B. The Research Paper confirms that Amazon's conduct violates the unfair and deceptive prong of the CPA and shows that the Terms and Notices are, at best, ambiguous.**

Plaintiffs' amended allegations include references to the updated Research Paper which reported that the majority of surveyed consumers understood Amazon's public statements to disclaim use of "voice recordings," including information derived therefrom, for targeted advertising. PAC ¶¶ 42–45. Even though Plaintiffs did not personally rely on these representations, they were nevertheless injured as a result of Amazon's deceptive conduct.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
LEAVE TO FILE AMENDED COMPLAINT- 5
2:22-cv-00800 BJR

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Plaintiffs allege that they were injured when Amazon used their voice recordings for targeted advertising without their knowledge or consent. Had Amazon adhered to its public representations that it did not use voice recordings for targeted advertisements, this would not have occurred. Here, Plaintiffs' claims arise from Amazon's omissions that it does use voice recordings for advertising. When a CPA claim is premised on an omission, reliance is presumed. *Deegan v. Windermere Real Est./Ctr.-Isle, Inc.*, 197 Wash. App. 875, 890, 391 P.3d 582 (2017); *Schnall v. AT & T Wireless Servs., Inc.*, 259 P.3d 129, 137 (Wash. 2011); *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2018 WL 2325426, at *16 (N.D. Cal. May 8, 2018) (noting that "federal and state cases interpreting the WCPA" have found "a rebuttable presumption of reliance" for omission cases which "renders causation unproblematic").  The public was deceived, and Plaintiffs' injuries arose from Amazon's conduct.

Moreover, Amazon's public statements undermine Amazon's current position that its terms unequivocally disclosed this use. Amazon claims that its 2016 terms disclosed that it used voice data to generate targeted ads. Subsequent public representations say otherwise. At the time that these statements were made that did not raise any red flags vis-à-vis Amazon's terms and notices because consumers and indeed, Amazon, reasonably interpreted the terms as excluding voice recordings from information used for personalized advertising. At best these terms were ambiguous and a reasonable consumer could have interpreted the terms to mean that Amazon was not using any information gathered from voice recordings for this purpose; the Court must construe them in Plaintiffs' favor at this stage and allow Plaintiffs to amend their claims.

### C. Plaintiffs expressly defined "Voice Data" in response to the Court's express exclusion of transactional information in its order.

Although Plaintiffs contend that Amazon did not adequately disclose its practices related to the use of voice recordings, Plaintiffs expressly included transactional information in their definition of voice data in the proposed Amended Complaint because Amazon argued for, and the Court adopted, the narrowest construction of that term to exclude transaction data. Dkt.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
LEAVE TO FILE AMENDED COMPLAINT- 6
2:22-cv-00800 BJR

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

48 at 6, n. 6. This distinction is relevant because Amazon represents—falsely, per Plaintiffs' contentions—that it only uses the transaction data generated from voice recordings for targeted advertising. Amazon's written policies do not make this distinction and when construed in the context of Amazon's public representations that it does not use voice recordings for targeted advertisements, it further calls into question the adequacy of its disclosures.

### D. Plaintiffs' amendments are not futile.

Plaintiffs' amendments are not futile and the Court should grant leave to file the proposed Amended Complaint.

First, Plaintiffs' good faith and fair dealing claims are not based on contractual obligations that do not exist. Although a party only has a duty of good faith and fair dealing with respect to contracted terms, a party can breach that duty even in the absence of a breach of the underlying contract. Here, Amazon breached the duty of good faith and fair dealing by obscuring its practice of use voice data to generate interest-based ads behind terms and notices that are so vague and ambiguous that the only reasonable inference is that they were intentionally constructed to confuse and obscure their actual practices. In other words, the intentionally vague drafting of the terms allowed Amazon to now claim that it always disclosed its use of voice recordings to avoid legal liability while previously disclaiming advertising usage of voice recordings when under public scrutiny. The purpose of the duty of good faith and fair dealing is to ensure that a party with discretionary authority to set a contract term to later interpret those terms in a manner contrary to who the other party understood them. *See Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wash. App. 732, 738 (1997). The proposed amendments are not futile because Plaintiffs allege that Amazon has used its vague disclosures to simultaneously benefit from not only the impression, but also express representations, that it does not use voice recordings for targeted ads, while in fact doing the opposite.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
LEAVE TO FILE AMENDED COMPLAINT- 7
2:22-cv-00800 BJR

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Second, Plaintiffs' WCPA claim does not fail because Plaintiffs allege that Amazon's disclosures were inadequate to disclose their actual practices of using voice recordings for targeted advertisements and accordingly, were not able to avoid injury by avoiding the product. Amazon can use Plaintiffs' information, including voice recordings, but only if that practice is adequately disclosed, which it was not. Moreover, Plaintiffs' allegations do meet the particularities of Rule 9(b). Amazon claims that it uses the downstream transaction data generated from voice recordings for targeted ads, not the voice recordings themselves. But Plaintiffs allege that they received targeted advertisements related to queries that were not transactions. PAC ¶¶ 91–93, 96–98.  Plaintiffs have alleged injury stemming from Amazon's unfair and deceptive practice: that their voice recordings were used without their consent and they could not have avoided injury by reading Amazon's vague terms and notices.

Third, Plaintiffs' intrusion on seclusion claim is not futile because Plaintiffs refute that they consented to the use of Alexa voice recordings for targeted advertisements when they initially registered their Alexa devices.

Finally, Plaintiffs agree that they have not included any additional factual allegations pertaining to their personality rights claim and submit only that the Court's ruling was premised on a material rephrasing of the statute to require that Plaintiffs' voices be used *in* advertisements, when the statute requires only that their voices be used *for* purposes of advertising products. RCW § 63.60.050. In this context, "in" and "for" have different meanings and cannot be substituted. Amazon used Plaintiffs' voice recordings for purposes of advertising even if their voices were not utilized in the ads. Moreover, Plaintiffs included this claim in their proposed Amended Complaint to ensure that they did not waive any rights to appeal the Court's ruling.

**CONCLUSION**

For all the reasons set forth above and in Plaintiffs' motion for leave to amend, the Court should grant the motion and permit Plaintiffs to file their proposed Amended Complaint.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
LEAVE TO FILE AMENDED COMPLAINT- 8
2:22-cv-00800 BJR

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

DATED this 7th day of April, 2023.

TOUSLEY BRAIN STEPHENS PLLC

By: *s/ Rebecca L. Solomon*
Rebecca L. Solomon, WSBA #51520
*s/ Jason T. Dennett*
Jason T. Dennett, WSBA #30686
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101-3147
Tel: (206) 682-5600
Fax: (206) 682-2992
Email:    rsolomon@tousley.com
          jdennett@tousley.com

Adam J. Levitt, Admitted *Pro Hac Vice*
Amy E. Keller, Admitted *Pro Hac Vice*
Nada Djordjevic, Admitted *Pro Hac Vice*
Sharon Cruz, Admitted *Pro Hac Vice*
DICELLO LEVITT GUTZLER LLC
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel: (312) 214-7900
Fax: (312) 253-1443
Email:    alevitt@dicellolevitt.com
          akeller@dicellolevitt.com
          ndjordevic@dicellolevitt.com
          scruz@dicellolevitt.com

David Straite, Admitted *Pro Hac Vice*
Corban Rhodes, Admitted *Pro Hac Vice*
One Grand Central Place, 60 East 42nd St.
Suite 2400
New York, NY 10165
Tel: (646) 933-1000
Email:    dstraite@dicellolevitt.com
          crhodes@dicellolevitt.com

***Attorneys for Plaintiffs and the Proposed Class***

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
LEAVE TO FILE AMENDED COMPLAINT- 9
2:22-cv-00800 BJR

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992